HACK, Plaintiff in error, vs. CITY OF MINERAL POINT, Defendant in error.

*October 17, 1930—January 13, 1931.*

216

For the plaintiff in error there were briefs by *Fiedler, Jackson & Boardman* of Mineral Point, and oral argument by *N. S. Boardman.*

*Thomas N. Burke,* city attorney of Mineral Point, for the defendant in error.

The following opinion was filed November 11, 1930:

ROSENBERRY, C. J. The principal contention of the defendant here is that the city council of Mineral Point had no power to pass the ordinance in question, and that if it had such power it had no power to provide for imprisonment for violation of the ordinance. It is conceded that if the city of Mineral Point had power it is derived from sec. 62.11 (5), Stats., which counsel for defendant designates a general welfare clause.

Prior to the enactment of ch. 242 of the Laws of 1921, the powers of cities of the second, third, and fourth classes were set out in sec. 925—52 of ch. 64bb, Stats. 1919, ordinarily known and described as the general charter law. Some cities had special charters. In that year all special charters of cities of the second, third, and fourth classes were repealed and all cities were brought under the reenacted general charter law, now ch. 62, by the enactment of the so-called revisor's bill. Prior to the revision, sec. 925—52, enumerating the powers of common councils, contained seventy-six subdivisions. In the introduction to the section it was provided:

"The council shall . . . have full power and authority to make, enact, ordain, establish, publish, enforce, alter, modify, amend and repeal all such rules, by-laws and regulations for the government and good order of the city, for

the benefit of its trade and commerce, and health of the inhabitants thereof, for the prevention of crime and for carrying into effect the powers vested in said council as they shall deem expedient; such council shall have power to declare and impose penalties and enforce the same against any person or persons who may violate any of the provisions of such ordinances. . . ."

Then followed the particular enumeration of the powers above referred to.

It is manifest from a perusal of this introductory clause that the power of the council to enforce ordinances was limited to the imposition of penalties. By the revision of 1921 the seventy-six specific provisions were omitted except as re-enacted in other parts of the chapter, and sec. 62.11 (5), which described the powers conferred upon cities of the second, third, and fourth classes, read as follows:

"Except as elsewhere in the statutes specifically provided, the council shall have the management and control of the city property, finances, highways, navigable waters, and the public service, and shall have power to act for the government and good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public, and may carry out its powers by license, regulation, suppression, borrowing of money, tax levy, appropriation, fine, imprisonment, confiscation, and other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants, and shall be limited only by express language."

That sec. 62.11 confers power far beyond that conferred in the so-called general welfare clause of the general charter as it stood prior to 1921 is plain, and a city operating under the general charter, finding no limitations in express language, has under the provisions of this chapter all the powers that the legislature could by any possibility confer upon it. The provisions of the chapter as it stood prior to 1921 clearly limited the power to enforce ordinances to the imposition of penalties. It now has the power to enforce

them by fine, imprisonment, confiscation, and other necessary or convenient means.

There remains then upon this branch of the case for consideration the question of whether or not the power thus granted has been withheld or withdrawn by express language. We are referred to no such language and we find none. A very lawyerlike argument, however, is made based upon the history of regulation in this state relating to the sale of intoxicating liquors, that such regulations are not matters of local concern but of state-wide and even national concern, and for that reason power to legislate in respect thereto cannot be vested in common councils. While the argument is not stated in those terms, that is in brief its substance.

We do not find it necessary to consider or determine whether the suppression of traffic in intoxicating liquors is a matter of local, state, or national concern. The manufacture, sale, and possession of intoxicating liquors are offenses under our law, and if done are done in violation of law. The city of Mineral Point has not attempted by the enactment of the ordinance in question to suppress a lawful business. It has long been established in our law that unless prohibited municipalities may enact ordinances providing for the punishment of offenders who might otherwise be punished under state law, if the ordinance does not conflict with the law of the state. *Ogden v. Madison,* 111 Wis. 413, 87 N. W. 568; *Milwaukee v. Ruplinger,* 155 Wis. 391, 145 N. W. 42; *Milwaukee v. Stachelski,* 185 Wis. 142, 200 N. W. 769. The fact that the suppression of the liquor traffic may be a matter of state-wide concern and subject to regulation or suppression by the state does not deprive the city of power to act under its powers within its territorial limits. One of the fundamental ideas of cities is that they may make such laws and regulations as are necessary to the peace and good order of the city due to any peculiar condition

which may exist within its boundaries and so supplement the efforts of the state to preserve peace and good order. Where, however, the state has entered the field of regulation, municipalities may not make regulation inconsistent therewith. *Baraboo v. Dwyer,* 166 Wis. 372, 165 N. W. 297; *Vanderwerker v. Superior,* 179 Wis. 638, 192 N. W. 60. For an apparent exception, see *Sutter v. Milwaukee Board of Fire Underwriters,* 164 Wis. 532, 160 N. W. 57, 1034.

It is, however, further argued that by the repeal of the Severson Act it has been declared that the ordinance in question is contrary to the public policy of the state. We are unable to perceive any grounds upon which this argument can rest. The state cannot by any enactment of its legislature make lawful that which is made unlawful by the provisions of the constitution of the United States. In the act repealing the Severson Act there is no "express language" limiting the power conferred upon municipalities by sec. 62.11. If the state is of the view that the suppression of the liquor traffic in cities should not be undertaken by cities, it has no doubt power to limit the authority of cities accordingly, but it has not done so.

It is considered, therefore, that the ordinance in question is a valid enactment not contrary to the public policy of the state, and that it is within the power of the common council of the city of Mineral Point to enact the ordinance.

In the course of our consideration we have already pointed out that the power to prescribe imprisonment as a punishment is granted in the broadest possible terms, and we find no limitation either by express language or implication upon that power except such as may inhere in constitutional provisions.

The attempt of the justice of the peace to suspend sentence in this case is of course void and of no effect. *In re Webb,* 89 Wis. 354, 62 N. W. 177. The ordinance confers

no such power nor is it conferred upon justices of the peace by any other provision of law. The fine and costs on account of the offense of which the defendant was convicted on October 11, 1929, were paid; likewise the fine and costs upon the conviction on February 14, 1930, were paid, so that we are not required here to determine the form of sentence where the court seeks to enforce a fine by imprisonment and in the same sentence impose a sentence of imprisonment under the ordinance, which provides:

"Any person violating any of the provisions of this ordinance shall be fined in addition to the costs of the action not more than one hundred dollars and in default of the payment of such fine and costs by imprisonment in the county jail of Iowa county not more than six months; or by imprisonment in the county jail of Iowa county not more than six months; or by both such fine and imprisonment."

The fine and costs having been paid in each instance, we are concerned here solely with the sentence to imprisonment. While the sentence of October 11th is imperfect in form, it is clearly evident that the justice intended to fine the defendant and commit him until the fine and costs were paid and in addition thereto sentence him to six months' imprisonment. The commitment which was issued on March 17, 1930, upon the judgment rendered February 14, 1930, directs the keeper "to there safely keep until the expiration of said one hundred eighty days." By reference to the transcript of the docket entries which is made part of the return, it is clear that this refers to the six months' imprisonment imposed by the sentence of October 11th. The attempt of the justice to suspend the sentence being void and of no effect, the time within which he might be committed and restrained under the sentence would expire with the expiration of the six-months period. This would be April 10, 1930. While the commitment was imperfect in form when taken in connection with the record in the case, which

under the statute is properly made a part of the return of the keeper in whose custody he was, it appears that he was confined by virtue of the judgment of a court of competent criminal jurisdiction, and while the commitment was defective that defect was subject to remedy at any time, even after the bringing of *habeas corpus.* 16 Corp. Jur. § 3125 and cases cited; *People ex rel. Trainor v. Baker,* 89 N. Y. 460. The term of imprisonment imposed by the judgment of October 11th not having expired at the time the writ of *habeas corpus* was issued, the trial court correctly held that the defendant was properly in custody and remanded him. *In re Murphy,* 148 Wis. 292, 134 N. W. 823.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on January 13, 1931.