SMITH, Respondent, vs. CITY OF WISCONSIN RAPIDS and another, Appellants.

*April 3—May 1, 1956.*

For the appellant city of Wisconsin Rapids there was a brief and oral argument by *John J. Jeffrey,* city attorney.

For the appellant Donald E. Beyer there were briefs by *Crowns, Crowns & Crowns* of Wisconsin Rapids, and oral argument by *Byron C. Crowns.*

For the respondent there was a brief by *Reiland & Schmidt* of Wisconsin Rapids, and oral argument by *Donald E. Reiland.*

BROWN, J.   For the site of a public toilet the city bought certain land and a building upon it.  Before construction started the plan was changed and the city built its toilet on other property across the street from the land so acquired.  It then rented the property in question to defendant Beyer who conducted a shoe store there.  Beyer now proposes to install a shoe-repairing business in the premises and the city proposes to let the property to him for this additional use.  Plaintiff has his own shop for repairing shoes in the vicinity and it is conceded the competition will damage him.  He has begun this action seeking an injunction, not to restrain the city from leasing its property for private use generally, but only from leasing for the use which competes with and damages him.  Such an injunction was granted.

There is no contention of bad faith on the part of the city in its original acquisition of this real estate or in the change in its plans which located the public toilet upon other property.

Though the questions to be determined on this appeal, as the parties state them, put in issue the right of a citizen in his individual, nonrepresentative capacity to maintain an action such as this, the briefs confine themselves to the issue of the city's power to lease public property to a private person for his private use and advantage.  Accordingly, we confine ourselves to that single issue as the circumstances of this case present it.

Sec. 3, art. XI of the state constitution,—the home-rule amendment,—provides:

"Cities and villages organized pursuant to state law are hereby empowered, to determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of state-wide concern as shall with uniformity affect every city or every village.  The method of such determination shall be prescribed by the legislature. . . ."

Pursuant to this constitutional provision, in 1921 the legislature enacted ch. 62, Stats.,—the home-rule chapter,—for the government of all cities except those of the first class. Wisconsin Rapids is not a city of the first class. By sec. 62.04, Stats., the legislature expressed its intent and gave directions concerning the construction of the chapter as follows:

"INTENT AND CONSTRUCTION. It is declared to be the intention of the revision of the City Charter Law, to grant all the privileges, rights, and powers, to cities which they heretofore had unless the contrary is patent from the revision. For the purpose of giving to cities the largest measure of self-government compatible with the constitution and general law, it is hereby declared that sections 62.01 to 62.26, inclusive, shall be liberally construed in favor of the rights, powers, and privileges of cities to promote the general welfare, peace, good order, and prosperity of such cities and the inhabitants thereof."

By sec. 62.11 (5), Stats., the legislature declared:

"*Powers.* Except as elsewhere in the statutes specifically provided, the council shall have the management and control of the city property, finances, highways, navigable waters, and the public service, and shall have power to act for the government and good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public, and may carry out its powers by license, regulation, suppression, borrowing of money, tax levy, appropriation, fine, imprisonment, confiscation, and other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants, and *shall be limited only by express language.*" (Italics ours.)

The effect of this has been well stated by the revisor of statutes, in Wisconsin Anno. (1950), 338, in referring to sec. 62.11 (5), Stats., thus:

"Prior to the enactment of this section by ch. 242, Laws 1921 (revision of City Charter Law) cities possessed speci-

fied powers. Their powers were limited to those expressed in the statutes and those necessarily implied by the expressed powers. All other powers were regarded as having been denied. That rule was changed by said chapter. Since then cities possess all powers not denied them by the statutes or the constitution. Instead of the powers being specified, as formerly, the limitations are now enumerated."

Our own construction has been the same, for in *Hack v. Mineral Point* (1931), 203 Wis. 215, 219, 233 N. W. 82, we said:

"That sec. 62.11 confers power far beyond that conferred in the so-called general welfare clause of the general charter as it stood prior to 1921 is plain, and a city operating under the general charter, finding no limitations in express language, has under the provisions of this chapter all the powers that the legislature could by any possibility confer upon it."

The power of the legislature to confer on cities the right to rent city property to private enterprise in competition with similar private business was recognized in many instances before the enactment of ch. 62, Stats., for instance in *Stone v. Oconomowoc* (1888), 71 Wis. 155, 36 N. W. 829. There the city proposed to rent a part of its city hall to persons intending to conduct there concerts, dances, and theatrical entertainments in direct competition with the plaintiff who had a private building used for such purposes. We held that "such letting and use is lawful." It must be conceded, then, that the power so to lease is one which the legislature could give and, therefore, which cities now possess unless there is express language in the statutes limiting it or withholding it from them. Respondent professes to find such a limitation in sec. 62.22 (1), Stats., which reads:

"ACQUIRING PROPERTY; OPENING OR CHANGING STREETS; CONDEMNATION ASSESSMENTS. (1) *Purposes.* The govern-

ing body of any city may by gift, purchase, or condemnation acquire property, real or personal, within or without the city, for parks, recreation, waterworks, sewage or waste disposal, airports or approaches thereto, cemeteries, vehicle parking areas, and for any other public purpose; may improve and beautify the same; may construct, own, lease, and maintain buildings on such property for public purposes; and may sell and convey such property. . . ."

Respondent submits that by this statute the legislature has authorized leases of public property only when the property is to be used by the tenant for a public purpose. We have not interpreted the statute so. Sec. 62.23 (17), Stats., appears in the statutes also, and provides:

"*Acquiring Land.* (a) Cities may acquire by gift, lease, purchase, or condemnation any lands (a) within its corporate limits for establishing, laying out, widening, enlarging, extending, and maintaining memorial grounds, streets, squares, parkways, boulevards, parks, playgrounds, sites for public buildings, and reservations in and about and along and leading to any or all of the same; . . .

"(b) After the establishment, layout, and completion of such improvements, such city may convey or lease any such real estate thus acquired and not necessary for such improvements, with reservations concerning the future use and occupation of such real estate, so as to protect such public works and improvements, and their environs, and to preserve the view, appearance, light, air, and usefulness of such public works, and to promote the public health and welfare.

"(c) The acquisition and conveyance of lands for such purpose is a public purpose and is for public health and welfare."

If sec. 62.22 (1), Stats., restricts leases by the city to public-purpose use of the property by the tenant, as the respondent contends, and which we need not now decide, sec. 62.23 (17) (b) has no such limitation. In *Kranjec v. West Allis* (1954), 267 Wis. 430, 66 N. W. (2d) 178, the city

leased a part of a city park to a corporation to be used for a private parking lot. A taxpayer brought suit to have the lease declared void and for an injunction. The city and the lessee demurred. Both secs. 62.23 (17) (b) and 62.22 (1) were called to our attention. We held that the complaint did not state a cause of action, thus holding that these statutes did not limit the city's right to lease the property for the private-business purpose.

Bearing in mind the grant of power to city councils to manage and control city property for the city's commercial benefit (sec. 62.11 (5), Stats., *supra*), and the legislative direction that secs. 62.01 to 62.26, inclusive, be construed liberally in favor of the rights, powers, and privileges of cities to promote their general welfare (sec. 62.04, *supra*), and recognizing, further, that questions of commercial benefit and general welfare (sec. 62.11 (5)), in the absence of abuse of the power, are matters to be determined by city legislative bodies rather than the courts, we measure the present facts against the requirements of sec. 62.23 (17) and we find: The property in question is within the city limits. It was acquired to be the site of a public building. The improvement (the public toilet), has been completed and this real estate is not necessary for it. By virtue, then, of sec. 62.23 (17) (b), the city may lease such unnecessary real estate and is no more required to withhold it from tenants engaged in private business in competition with respondent than the city of West Allis was so limited in leasing park and playground property for a private parking lot, as in *Kranjec v. West Allis, supra*.

We conclude that the injunction should not have been granted.

The counterclaim of the defendant Beyer appears to have been dismissed on the merits as an incident to the trial court's

determination that the city could not let this realty to him. Upon remand the trial court should dispose of the counterclaim as the facts and the law require.

*By the Court.*—Judgment reversed, and cause remanded with directions to dissolve the injunction and to have further proceedings in accordance with law and this opinion.