BEARDSLEY, Appellant, v. CITY OF DARLINGTON and others, Respondents.*

*September 8—October 3, 1961.*

* Motion for rehearing denied, with $25 costs, on November 28, 1961.

370

For the appellant there were briefs by *Hale, Skemp, Hanson, Schnurrer & Skemp,* and oral argument by *T. H. Skemp* and by *Joseph D. Becker,* all of La Crosse.

For the respondents there was a brief and oral argument by *Gilbert F. Barnard* of Darlington.

BROWN, J. Appellant submits that the issue before us is this:

"Is a legislative act by a Wisconsin municipal corporation, authorizing the expenditure of taxpayers' money for the purpose of the erection and maintenance of a television-translator station, a valid exercise of its legislative function?"

The material facts on this issue are not in dispute. The answer to appellant's question is a matter of law.

Appellant contends that the proposed erection of the translator station, "in attempting to engage in the business of operating a medium of communication such as a television-translator station, is in violation of the fundamental principles of both the federal and state constitutions." The parts of the federal and state constitutions which he alleges would be violated by this activity are:

"Article V of the federal constitution in substance provides:

" 'No person . . . shall be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.'

"Article XIV of the federal constitution provides:

" '. . . nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.'

"Article IV, sec. 4 of the United States constitution provides:

" 'The United States shall guarantee to every state in this union, a Republican form of government. . . .'

"Article VIII, sec. 3 of the Wisconsin constitution provides:

" 'The credit of the state shall never be given, or loaned, in aid of any individual, association, or corporation.'

"Article I, sec. 22 of the Wisconsin constitution provides as follows:

" 'The blessings of a free government can only be maintained by a firm adherence to justice, moderation, temperance, frugality, and virtue, and by frequent recurrence to fundamental principles.' "

We confess our inability to understand how or wherein these constitutional enactments are applicable to the city's proposal to erect a municipal TV-translator station.

We do find in the Tenth amendment to the United States constitution the injunction that, "The powers not delegated to the United States by the constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people." Thus, the functions of the state and federal constitutions are therefore quite different.

"The federal government is one of delegated powers, the state government is one of inherent or reserved powers; the former competent to act only within the sphere prescribed by the constitution; the latter exercising all the functions of sovereignty not delegated or relinquished by that instrument." *In re Booth and Rycraft* (1854), 3 Wis. 144, 175 (\*157, \*193). (Reversed on another ground.)

While the congress has only such powers as are affirmatively given to it, the legislature of a state has all the powers of legislation from which it is not prohibited by express words of the constitution, or by necessary implication thereof. *Northwestern Nat. Bank v. Superior* (1899), 103 Wis. 43, 45, 79 N. W. 54. We find nothing in the Wisconsin constitution which, either by express words or necessary implication, prohibits the legislature from granting authority to cities to undertake a work of this nature provided the expenditure of public funds be for a public purpose. On the contrary, sec. 3, art. XI, Wisconsin constitution, the home-rule amendment, provides:

"Cities and villages organized pursuant to state law are hereby empowered, to determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of state-wide concern as shall with uniformity affect every city or every village. The method of such determination shall be prescribed by the legislature. . . ."

Pursuant to this authorization, in 1921 the legislature enacted ch. 62, Stats., for the government of all cities except those of the first class. Darlington is a city of the fourth class. We considered this amendment and the legislation based upon it, particularly sec. 62.04 and sec. 62.11 (5), Stats., in *Smith v. Wisconsin Rapids* (1956), 273 Wis. 58, 60, 61, 76 N. W. (2d) 595, finding from our study that such cities' powers include the management and control by the city council of, among other things, city finances and the public service and "to act for the government and good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public, . . ." and shall be limited only by express language. Since the enactment of ch. 62, Stats., such cities possess all powers not denied them by the statutes or the constitution. Instead of the powers being specified, as formerly, the limitations are now enumerated. In *Hack v. Mineral Point* (1931), 203 Wis. 215, 219, 233 N. W. 82, we held:

". . . a city operating under the general charter, finding no limitations in express language, has under the provisions of this chapter all the powers that the legislature could by any possibility confer upon it."

We find no language in either the constitution or ch. 62, Stats., prohibiting the activity which the city now contemplates, provided always that the expenditure or the work done is for the public purposes enumerated, *supra*. In the *Smith Case, supra*, at page 63, we recognized that questions

of general welfare in the absence of abuse of the power are matters to be determined by the city legislative bodies rather than the courts.

Now we reach "the welfare of the public" as it applies to this city project. Does this "involve a public function or be concerned with some element of public utility?" *Heimerl v. Ozaukee County* (1949), 256 Wis. 151, 160, 40 N. W. (2d) 564.

*Rindge Co. v. County of Los Angeles* (1923), 262 U. S. 700, 43 Sup. Ct. 689, 67 L. Ed. 1186, involved the building of a public road. The objectors contended that this was not a road providing convenience or necessity to the public but was merely to create a scenic highway. Speaking for the court, Mr. Justice SANFORD said (p. 707): "Public uses are not limited, in the modern view, to matters of mere business necessity and ordinary convenience, but may extend to matters of public health, recreation, and enjoyment." In the same opinion the court said: "It is not essential that the entire community, nor even any considerable portion, should directly enjoy or participate in any improvement in order to constitute a public use."

The television industry provides programs which may be seen and heard by those persons having access to television sets in homes or in public places. We take judicial notice that this comprises a large proportion of the public.

We need not indorse the desirability of every television program. We do take judicial notice that there are programs of substantial public benefit—addresses by leaders in government and politics, leaders in education and economics; the dissemination of knowledge of the proceedings of legislative bodies or international congresses; matters relating to our health, to our common defense; to our safety; to stock and crop reports. In the cultural field, drama and

music are transmitted over the air through the medium of television, with potential benefit to that part of the public which cares to listen and to see—provided they live in an area which the television program reaches.

We quote from respondents' brief:

"The city is not engaging in a business. It is charging no fee. It would be impossible so to do. It receives no income whatever. No one has any financial interest in the operation. No advertising dollars flow to or through the city. Nothing whatever is broadcast or originated by the city. It merely takes the signal which it receives, amplifies it and by directional beam retransmits it to the city residents over the air waves. It is licensed by the F. C. C., and the technical requirements to prevent interference and interdiction with other signals or use of the air waves is prescribed and controlled by the F. C. C.

"Just as swimming pools, stadiums, and youth centers have provided recreation, spectator entertainment, and education for the young, adequate TV reception provides entertainment, education, and news for particularly the more aged and infirm.

"It is a difficult thing to explain to our older citizenry why we can spend $100,000 for a swimming pool and $150,000 for a gymnasium large enough to permit the townsfolk to come, see, and be entertained at basketball games; why we can spend thousands of dollars at fairs for commercial enterprises to come sell their wares, *but* then say a moderate outlay to provide them the means of seeing and enjoying a most-accepted medium of news dissemination, entertainment, and education is illegal."

We think this is well said, but that would not suffice if we found that the city council acted in excess of or contrary to the powers which the home-rule amendment and the remainder of ch. 62, Stats., gave it. We find no constitutional or statutory restriction affecting this TV-translator project.

We concur in the opinion of the learned trial judge on file herein:

"It is the opinion of the court that activities to improve the quality of television service in communities where reception is limited and inferior does serve a public purpose. It is a matter of common knowledge that television broadcasting and reception is common, widespread, and in daily use. It can be and is an accepted medium for dissemination of news of general public interest such as governmental and political events, weather reports, and other pertinent news. It also can be and is a source of recreation and entertainment generally desirable by the public."

We conclude that the means sought to improve the quality of television reception in the Darlington area is a permissible municipal activity in promotion of public health, safety, and welfare. Whether under the surrounding circumstances the action of the city council to accomplish that end in that particular manner is a question for the city council, not for the court. From the facts set out in the pleadings and affidavits we cannot hold that the council's action is capricious, arbitrary, nor abuse of power. Consequently, we affirm.

*By the Court.*—Judgment affirmed.