WISCONSIN TOWN HOUSE BUILDERS, INC., and another, Plaintiffs and Appellants, v. CITY OF MADISON, Defendant and Respondent: MADISON BANK & TRUST COMPANY, Defendant.

*November 1—November 28, 1967.*

---

[28] *Supra,* footnote 21, at page 386, footnote 13.

45

46

48

For the appellants there were briefs and oral argument by *Aubrey R. Fowler* of Madison.

For the respondent there was a brief by *Edwin C. Conrad*, city attorney, and *Robert T. Semrad*, assistant city attorney, and oral argument by *Mr. Semrad*.

HALLOWS, J.

### *The City's Power to Establish a Controlled-Access Street.*

Cities under the home-rule amendment as implemented by statute have police power to create and lay out controlled-access streets. By art. XI, sec. 3 of the Wisconsin Constitution, cities and villages were empowered to determine their local affairs and government subject to the constitution and such enactments of the legislature of statewide concern as shall with uniformity affect every city and village. Ch. 62, Stats., confers all necessary powers on cities operating under home rule which are not enumerated as limitations upon their governmental power. *Beardsley v. Darlington* (1961), 14 Wis. 2d 369, 111 N. W. 2d 184. Thus unless there is a limitation upon the city's power by express language forbidding the establishment of a controlled-access street, the city operating under the general charter has such power. *Hack v. Mineral Point* (1931), 203 Wis. 215, 233 N. W. 82.

It is probably true most controlled-access streets or highways are established or laid out under the police power and the detailed provisions and limitations relat-

ing to the exercise of that power by the state highway commission is set forth in ch. 84, Stats., and in ch. 83, in respect to county boards. Neither of these agencies has home-rule power and it is significant that no similar statute regulating the exercise of the police power in respect to the controlled-access feature of streets governs cities and villages. But the absence of such provisions does not imply the negation or the nonexistence of the police power of the city over the subject matter of controlled-access streets. We do not agree with the contention of the plaintiff that a city has no police power to establish a controlled-access highway and that alternatively, if the city has such power, it must comply with the procedure in chs. 83 or 84 when exercising such power.

The control over highway or street access is not exclusively the subject matter of police power. Such control might be through the use of the law of nuisance, by negotiated purchase, or, as in this case, through the acquisition of the necessary property through the exercise of the power of eminent domain. For a discussion of the problems involved in the use of the various methods, see Netherton, *Control of Highway Access* (1963).

It must be noted as a preliminary matter that, contrary to the appellant's contention, a property owner has no right of access to a road that does not exist but would abut his land if it did exist. This leads to the general rule that "where a limited-access road is constructed where no such road existed before, the landowner cannot recover damages by reason of lack of access to such new road, because no such right existed before." 3 Nichols, *Eminent Domain*, p. 393, sec. 10.2211 (4) ; A. B. A. Section of Local Government Law, 1964 Report of Committee on Condemnation and Condemnation Procedure, p. 56; Annot. (1955), *Abutting owner's right to damages or other relief for loss of access because of limited-access highway or street*, 43 A. L. R. 2d 1072, 1079; *Winn v.*

*United States* (9th Cir. 1959), 272 Fed. 2d 282; *South Carolina State Highway Dept. v. Bolt* (1963), 242 S. C. 411, 131 S. E. 2d 264; *Commonwealth v. Raybourne* (Ky. 1963), 364 S. W. 2d 814; *State v. Young* (1963), 275 Ala. 648, 157 So. 2d 680.

Likewise, many Wisconsin cases have recognized the rule that if an existing or new highway is properly declared under the police power to be a limited-access highway, any resulting damage to property through the exercise of the police power, insofar as access rights are concerned, is not compensable. *Carazalla v. State* (1955), 269 Wis. 593, 70 N. W. 2d 208, 71 N. W. 2d 276; *Nick v. State Highway Comm.* (1961), 13 Wis. 2d 511, 109 N. W. 2d 71, 111 N. W. 2d 95; *Stefan Auto Body v. State Highway Comm.* (1963), 21 Wis. 2d 363, 124 N. W. 2d 319; and *McKenna v. State Highway Comm.* (1965), 28 Wis. 2d 179, 135 N. W. 2d 827. The appellant argues that if the city chooses to take away access through an eminent-domain proceeding, it then must compensate the condemnee.

The access rights of an abutting property owner to an existing highway may be such that they cannot be taken by a valid exercise of the police power and in that situation resort to condemnation must be had. This court held in *Hastings Realty Corp. v. Texas Co.* (1965), 28 Wis. 2d 305, 137 N. W. 2d 79, that where a street had not been declared a controlled-access highway but existing access rights were acquired by condemnation, compensation had to be paid. The court specifically held that if access rights were acquired by the proper exercise of police power, no compensation need be paid. When no access rights exist to a newly laid out highway, whether it is declared to be nonaccess through the exercise of the police power or such declaration is made as part of the condemnation proceeding, no compensation need be paid. While a city must pay for the right of access it takes,

there is no constitutional mandate that it must pay for that which it does not give and that is the case here.

In its reply brief, the plaintiff contends, in effect, that the city by exercise of eminent-domain powers under ch. 32, Stats., cannot establish a controlled-access street without taking away access rights and compensating the condemnee therefor. We do not agree; we think the city by ch. 32 may establish a controlled-access street without paying for access rights if no such rights existed prior to the establishment of the street by the relocation order.

Sec. 32.05, Stats., gives the city the power to condemn for streets. The first step is the laying out of the street by the adoption of a relocation order. This order takes the place of and constitutes a determination of necessity. This order must establish the street and include a map or plat showing the old and new locations and the lands and interests required. If the establishment of the controlled-access street is such that existing access rights are required, they must be acquired and are an item of damages under sec 32.09 (6) (b). We do not understand this section to mean that a city through condemnation may only establish or lay out a controlled-access street when it pays for access rights. This section means only that if there are existing access rights they are a proper item of damage when taken.

Under this new procedure of using a relocation order to establish the necessity for the taking and determining its purpose by incorporating therein engineering maps of the project, the intention of the city or condemnor to acquire or deny abutters access rights is shown by the features drawn on the map and by the statements appearing thereon. We think this is a valid procedure to lay out a street. Sec. 32.05, Stats., should not be construed as granting power only to establish a street which requires the condemnation of land and access rights. We hold that under ch. 32, a city may create a controlled-access street.

Whether the property owner is entitled to compensation for access rights depends upon other factors. If a city under home rule is to be required to pass a separate ordinance or resolution establishing a controlled-access street under safeguards similar to those in chs. 83 and 84, before it can exercise the power of eminent domain for such purpose, such safeguards will have to be supplied by the legislature.

### *The Validity of the Condemnation Procedure.*

The relocation order, which established the connector street as a nonaccess street, incorporated therein the map or plat showing the type, nature and engineering data of the highway and the designations of nonaccess. In this order the reference to and the designation of the map and of the highway could be improved by the addition of a description of the project in layman's language, but we hold the omission is not fatal to the order's validity.

No objection is taken by the plaintiff to the appraisal or the negotiation as steps in the condemnation process. However, the plaintiff argues the jurisdictional offer is void because it did not state the nature of the project, describe the property and the interests therein to be taken, and did not itemize "the items of damage," all as required by sec. 32.05 (3) (a), (b) and (d), Stats. In the jurisdictional offer the nature of the project is described in highly technical terms which to a layman are unintelligible. The addition of one sentence stating that part of the owner's property was taken for a right-of-way for a controlled-access street between Highway 30 and Highway 113 would tell infinitely more to the owner than "Phase II, (Connector) formally known as Wisconsin State Project No. T-0219 (3) Dane County," etc.

More importantly, the jurisdictional offer misinforms the owner of what is being taken by condemnation. The

offer states the city is to acquire the fee title to Parcel A and the access rights over Parcel B. Parcel A describes by metes and bounds a triangular piece of the owner's land to be taken, but Parcel B describes no land but merely a line of the southern edge of the connector street and provides the city is acquiring "all existing, future or potential common-law or statutory easements or rights of access" to and from the street where the real property of the owner abuts that line. This provision purports to take something and is confusing and misleading. If the city is acquiring existing, future and potential common-law rights of access to the highway from an owner's land he would naturally expect to be paid therefor. This language does not inform the owner he had no such access rights and is inconsistent with the map showing no access. Since no such rights exist in the proposed street as the map and the laying out of the road indicate, the jurisdictional offer should plainly say so. There is no need to condemn what does not exist. This same defect is apparent in the award of compensation. This defect in the jurisdictional offer is further compounded by the fact the damages are not itemized. The offer followed the practice used prior to 1959 and merely provided that "for the above mentioned interest in the said land the city of Madison is paying the sum of $5,222." Any fair-minded owner would expect that amount of money included damages for existing, future and potential rights of access which the offer said the city was taking in addition to the triangular piece of land. To avoid any such misconception, sec. 32.05 (3) (d), Stats., requires an itemization of damages; this is not directional but mandatory. In the notes to the 1959 revision of ch. 32, we find, "Note [Subsec. 4],—The taking of private property for public use is a procedure in which the property owner should be given great consideration. He should be clearly informed with respect to the lettered items in sub. (3)."

4 W. S. A. 685. *See also* Heaney, *"The New Eminent Domain Law and the Wisconsin Practitioner,"* 1960 Wis. L. Rev. 430; *Arrowhead Farms, Inc., v. Dodge County* (1963), 21 Wis. 2d 647, 124 N. W. 2d 631.

Although the appraisal "itemized the items of damages" and included nothing for "existing, future and potential rights of access," the reference to such appraisal in the jurisdictional offer does not satisfy the call of this statute. The requirement of sec. 32.05 (3) (e), Stats., that a jurisdictional offer must make reference to the appraisal and where it may be found is in addition to the requirement of sec. 32.05 (3) (d) that damages be itemized in the jurisdictional offer. We think the jurisdictional offer is so defective that it cannot stand and must be declared void. However, it does not follow, as contended by the plaintiff, that the condemnation process is thereby void *ab initio* including the layout of the street as a controlled-access street. The relocation order is a determination of necessity and of the purpose of the condemnation and remains unaffected. We think the relocation order, appraisal, and the negotiation are valid steps in the process for the purpose of compensating the plaintiff for the property taken. The city of Madison should make a new and proper jurisdictional offer to purchase the plaintiff's land and the condemnation proceeding should continue from that point.

*By the Court.*—The judgment is reversed and the rights of the plaintiff Wisconsin Town House Builders, Inc., and the defendant city of Madison are declared as set forth in this opinion.

WILKIE, J., took no part.