PAMANET, Plaintiff in error, v. STATE, Defendant in error.

*No. State 4. Argued December 2, 1970.—Decided January 5, 1971.*
(Also reported in 182 N. W. 2d 459.)

502

For the plaintiff in error there were briefs and oral argument by *James H. McDermott*, state public defender.

For the defendant in error the cause was argued by *Thomas J. Balistreri*, assistant attorney general, with whom on the brief were *Robert W. Warren*, attorney general, *William A. Platz*, assistant attorney general, and *Daniel F. Aschenbrener*, district attorney of Shawano and Menominee counties.

ROBERT W. HANSEN, J.  The challenge here is to the constitutionality of the court, district attorney and jury involved in the trial of the defendant on a serious felony charge.

**(1)** *As to the trial court.*

The defendant contends that the establishment by the legislature of a joint Shawano-Menominee county court [1] violates art. VII, sec. 2, Wisconsin Constitution.[2] Defendant's counsel would have us read into the constitutional provision a prohibition against the establishment of county or inferior courts serving more than one county. Instead we have interpreted this provision to give broad powers to the legislature in the creation of county or inferior courts.[3] In fact, we have recognized the existence

---

[1] "Menominee county shall not be organized separately for county court purposes, but shall be a part of a joint Shawano-Menominee county court, which constitutes a single judicial district. . . ." Sec. 253.015, Stats.

[2] "The judicial power of this state, both as to matters of law and equity, shall be vested in a supreme court, circuit courts, and courts of probate. The legislature may also vest such jurisdiction as shall be deemed necessary in municipal courts, and may authorize the establishment of inferior courts in the several counties, cities, villages or towns, with limited civil and criminal jurisdiction. . . ." Art. VII, sec. 2, Wis. Const.

[3] "County courts are statutory courts. The constitution did not create them nor require the legislature to do so. Sec. 2 of Art. VII,

of the exact court whose existence is here challenged.[4]
Here we deal with the creation of a new county so it
might be sufficient to recall decisions making clear that
a county may be organized for county purposes, and be
attached to some other county for judicial purposes.[5]
However, we go further to hold that when a judicial dis-
trict is established including two or more counties, the
county court in such district is a county court for each
such county. The question as to whether several counties
are to be served by a single judge is a matter of legisla-
tive policy, not of constitutional mandate.

---

Wis. Const., empowered the legislature 'to establish inferior courts
in the several counties, with limited civil and criminal jurisdiction.'
This is the general authority for the creation of the county courts,
as well as for numerous other inferior courts, with varying names
and powers, created from time to time before court reorganization.
The legislature may alter or abolish such courts, as well as create
them." *State ex rel. Sachtjen v. Festge* (1964), 25 Wis. 2d 128,
143, 130 N. W. 2d 457.

[4] *Id.* at page 145, recognizing the judicial district here involved:
"There is a separate county court in every county, except that
Shawano and Menominee counties are joined in a single district,
with one county court. Florence and Forest counties are combined
for the purpose of electing one judge to serve the county courts of
both counties. . . ."

[5] ". . . the constitution, in another article, speaks of 'each
county of this state organized for *judicial purposes*' (art. VII, sec.
11), clearly indicating that a county may be organized as a county,
and yet not organized as such for judicial purposes. Accordingly,
there are several counties in the state organized for county pur-
poses only, and yet each is attached to some other county for
judicial purposes. . . ." *State ex rel. Brown v. Stewart* (1884),
60 Wis. 587, 597, 598, 19 N. W. 429. *See also: Cathcart v. Comstock*
(1883), 56 Wis. 590, 14 N. W. 833, validating the establishment
of Lincoln county as organized for all except judicial purposes,
being attached to Marathon county for judicial purposes; and
*State ex rel. Hicks v. Stevens* (1901), 112 Wis. 170, 88 N. W. 48,
holding valid the organization of Gates (renamed Rusk) county
for all purposes except election of legislative representative, being
attached to Chippewa county for purposes of representation in the
assembly.

**(2)** *As to the district attorney.*

Here the argument is that the statute providing that "the district attorney of Shawano county shall serve as district attorney for Menominee county" [6] conflicts with the constitutional requirement that district attorneys be chosen by the electors of a county once in every two years.[7] Defendant's counsel argues that electors of Menominee county are being deprived of the constitutional right to elect their district attorney. The counter argument includes the contention that, since Menominee county has been and can be organized for county purposes, but not judicial purposes, the county simply does not exist for judicial purposes, including that of electing its own district attorney. There is precedent in this state for the constitutional organization of a county absent an organization for judicial purposes.[8] We need not find an

[6] ". . . Menominee county shall be attached to Shawano county for judicial purposes to the extent of the office and functions of the district attorney, and the district attorney of Shawano county shall serve as district attorney for Menominee county with all the duties, rights and powers of district attorney therein, and no district attorney shall be elected in Menominee county, the county not being organized for that purpose. . . ." Sec. 59.475, Stats.

[7] ". . . district attorneys . . . shall be chosen by the electors of the respective counties once in every two years. . . ." Art. VI, sec. 4, Wis. Const.

[8] Where a newly organized county (Lincoln) was attached to an established county (Marathon) for judicial purposes, this court upheld the arrangement, stating: "It is claimed by counsel who appear *amici curiae*, that the act under which the organization was effected is void, because it did not provide for the election of a district attorney. Neither did it provide for the election of a sheriff or clerk of the circuit court, for the very obvious reason that the act expressly provided that the territory therein designated should, when organized, 'constitute a separate county, except that the same shall be and remain attached to the county of Marathon for all judicial purposes under the laws of this state.' Being still a part of Marathon county for all judicial purposes, the sheriff, district attorney, and clerk of the court for Marathon were also such officers for the territory included in Lincoln county as

exact analogy between the situation of Lincoln county then, with Menominee county now, to note that in both situations the assertion is of a constitutional right to vote for the district attorney. As to Marathon county then, and Shawano county now, there could be no claim that there was not a lawfully established office of district attorney. As to Lincoln county then, Menominee county now, the issue is as to the legality of the acts of the district attorney. As to the right of such at least acting district attorney to prosecute him, this court long ago established that is not an available defense to the defendant in a criminal prosecution.[9] It is only where the existence of the office is questioned that collateral attack has been allowed.[10] Here, in any event, the district attorney, at the very least, was an officer de facto,[11]

a part of Marathon county for that purpose. We apprehend there is no constitutional objection to the two counties remaining united for judicial purposes, notwithstanding the organization of the new county for other purposes. Such acts have often been passed, and we are not aware that they have ever been questioned." *Cathcart v. Comstock, supra,* footnote 5, at page 604.

[9] ". . . The question could not be raised in this case which office the said [district attorney] rightfully held. The court could not step aside from the issue in the case and try his right to prosecute. He should be brought up in the way known to the law, or on application for a writ of *quo warranto,* where he could be heard. His holding the commission of district attorney at the time was sufficient to enable him to appear before the grand jury, and neither they nor the court could stop to inquire how many offices he held. It was sufficient that he held the commission of district attorney from competent authority, and as long as his commission remained without being superseded or vacated, the validity of his acts cannot be questioned. . . ." *Lask v. United States* (1840), 1 Wis. (Pinney), 77, 80.

[10] *In re Burke* (1890), 76 Wis. 357, 45 N. W. 24.

[11] ". . . As a general rule, all that is required to make an office *de facto* is that the individual claiming the office be in possession of it, performing its duties, and claiming to be such officer under color of an election or appointment." *State ex rel. Reynolds v. Smith* (1964), 22 Wis. 2d 516, 522, 126 N. W. 2d 215.

and, even if his acts were arguably illegal as to Menominee electors, such acts are still valid.[12] So, on the facts here, the defendant cannot collaterally attack the authority of the district attorney to prosecute the case, and, even if permitted, would not here invalidate the acts of the district attorney in prosecuting this case.

### (3) As to the jury.

The claim here is that the trial by a jury of the "single judicial district" violates art. I, sec. 7, Wisconsin Constitution, providing for trial by a jury "of the county or district wherein the offense shall have been committed." Postconviction counsel seems to read into this provision some requirement that a jury must be comprised of residents of the county in which the offense was committed or case tried. However, this court clearly has interpreted the word "district" to mean something other than a county,[13] that can be smaller, or larger, than a county.[14]

---

[12] ". . . While the right to hold an office when tenure is based on a de facto status may be attacked directly, the officer's acts are valid as to the public, and third parties and cannot be attacked collaterally. . . ." Burton v. State Appeal Board (1968), 38 Wis. 2d 294, 304, 156 N. W. 2d 386.

[13] ". . . the words 'or district,' as used in this clause of the constitution, were intended by the framers of that instrument, and understood by all at the time, to mean something different than the word 'county' as therein used; especially when taken in connection with the words 'which county or district shall have been previously ascertained by law.' " State ex rel. Brown v. Stewart, supra, footnote 5, at page 596.

[14] "The word 'district' here plainly means something different from a county; otherwise the word would be useless. . . . If there may be a district with different boundaries from those of a county, why may not such a district be smaller than a county, as well as larger? We see no good reason. Certainly it must be either larger or smaller if the word is to have any meaning; and we know of no facts, either in the history of the state or of the formation of the constitution, which would justify us in holding that the word 'district,' as here used, must mean a district larger than a county,

The organization of a "single judicial district" for Shawano-Menominee counties was a valid exercise of legislative authority. The jury drawn from such district was a proper jury to try the defendant.

The defendant contends, and the state concedes, technical irregularities in the assembling of the jury list in that a new list should have been drawn up two months earlier and the list used was drawn up on the first Monday in April rather than before the first Monday in April. Defendant finds a constitutional right invaded by such failure to strictly comply with statutory requirements. However, the general rule is that statutes prescribing the mode of drawing a jury panel are directory, and irregularities in carrying out such provisions are not material unless the defendant is prejudiced thereby,[15] and that is the rule followed in this state.[16] No claim of prejudice to the defendant is here made. The challenge is not to the method of selection, but only as to the date of the list. As to the date of the document, ". . . the substantive method of choice which was *in fact* utilized is the crucial element, rather than the document which stands as a *symbol* of the approved method. . . ."[17] On the claim that the uniformity requirement of art. IV, sec. 23, Wisconsin Constitution, is violated by district-based jury lists, the obvious answer is that jury lists are exempt from such requirement by art. I, sec. 7, Wisconsin Constitution. On the claim that the general statute providing for three jury commissioners in each county[18] is violated by the statute providing for jury

and nothing else. . . ." *Shaffel v. State* (1897), 97 Wis. 377, 380, 381, 72 N. W. 888.

[15] *See* 5 Wharton's, *Criminal Law and Procedure*, p. 82, sec. 1956.

[16] *Petition of Salen* (1939), 231 Wis. 489, 491, 286 N. W. 5; *Ullman v. State* (1905), 124 Wis. 602, 609, 103 N. W. 6.

[17] *State v. Nutley* (1964), 24 Wis. 2d 527, 539, 129 N. W. 2d 155, certiorari denied, 380 U. S. 918, 85 Sup. Ct. 912, 13 L. Ed. 2d 803.

[18] Sec. 255.03 (1), Stats.

commissioners serving Menominee county,[19] the simple answer is that the special statute, subsequently enacted, governs and controls.

*Claims of error.*

The transparent lack of merit or substance to the claims of trial court error warrant capsulized comment. (1) Error is alleged in the trial court instructing the jury to "keep an open mind." The admonition is to be complimented, not condemned. (2) Error is suggested in the trial court reading of the not guilty verdict at the end of the instructions. If last impressions are at all lasting, the state, not the defendant, should be claiming to have been prejudiced by the sequence followed. (3) Error is claimed in the failure to instruct the jury that intoxication was a defense. The case was tried for the defendant on the theory of self-defense, not on the claim of intoxication to the degree negativing the existence of a state of mind essential to the crime. No instruction as to intoxication was requested. It was not error to fail to include such instruction. (4) Error, it is argued, occurred in the following colloquy on cross-examination: Asked if he had ever been convicted of a crime, defendant answered, "Yes." Then asked, "How many times?", defendant answered, "I don't know." Then asked, over objection, "Would it be fair to say you have been convicted of a crime at least 12 or 13 times?", defendant answered, "I don't keep track of records. I wouldn't know." The defendant, having taken the witness stand, could be asked if he had ever been convicted of a crime and, if so, how many times.[20] Where incorrect answers are given by the witness, further inquiry is permitted,[21]

---

[19] Sec. 253.015, Stats.

[20] *Liphford v. State* (1969), 43 Wis. 2d 367, 370, 168 N. W. 2d 549; *State v. Midell* (1968), 39 Wis. 2d 733, 159 N. W. 2d 614. *See also: Underwood v. Strasser* (1970), 48 Wis. 2d 568, 180 N. W. 2d 631.

[21] *Rausch v. Buisse* (1966), 33 Wis. 2d 154, 146 N. W. 2d 801.

although the nature of the convictions cannot be inquired into if the witness answers truthfully the questions initially asked.[22] Here the inconclusive answer given by the defendant as to the number of convictions warranted the additional inquiry. If an inaccurate inference was left by the final question asked, the defendant had the opportunity on redirect examination to rebut any such inference.

### Competence of counsel.

As has become almost par for the course, postconviction counsel challenges the competence of trial counsel. Here the Monday morning quarterbacking [23] goes no further than suggesting that an attorney who did not try the case would have tried it differently than the attorney who did. It is always easy to suggest a different game plan after the contest is concluded. Here the unwarranted challenge to competence relates entirely to trial tactics, tactical decisions at the time of trial that are not to be second-guessed on appellate review.[24] (1) Postconviction counsel suggests that he, if he had tried the case, would have asked more questions of prospective jurors. Not being a member of the local bar and not having tried cases before the same jury panel, he might well have felt obliged to do so. The extent of any such interrogation is for the attorney trying the case to determine. (2) Postconviction counsel suggests he would have made intoxication a principal defense and would have requested an instruction on intoxication as a defense. Trial counsel tried the case on the theory of self-defense, electing not to dilute such defense with the claim of the high degree of intoxication necessary to negative the existence of a state of mind required by the

---

[22] *State v. Adams* (1950), 257 Wis. 433, 43 N. W. 2d 446.

[23] *Cross v. State* (1970), 45 Wis. 2d 593, 603, 173 N. W. 2d 589.

[24] *Kain v. State* (1970), 48 Wis. 2d 212, 179 N. W. 2d 777.

offense. He was not required to do so.[25] (3) Postconviction counsel finds incompetence suggested by trial counsel having mislaid certain notes he took during the trial. This was a day and one-half trial. Trial counsel testified that he had a perfect memory as to what transpired and did not need the notes involved. He is the best, in fact, the sole judge as to that. (4) Postconviction counsel is critical of a failure to object to the use of the language, "guilty of injury by conduct regardless of human life," taken from the title of sec. 940.23, Stats. Specific instructions as to the meaning of the term "great bodily harm" and as to the requirement that such harm be the "first element of injury by conduct regardless of life," made any error not prejudicial. (5) Postconviction counsel avers that trial counsel failed to advise defendant he had a right not to take the witness stand during the trial. The trial court found at the postconviction hearing that the defendant had been properly advised as to his constitutional rights. Trial counsel testified that he had informed him of his rights, not only on the occasion of this trial, but in a previous representation. Actually, the defendant signed a confession which specifically set forth his rights and the fact that he understood them. The defendant here was no tenderfoot scout attending his first troop meeting. The trial court finding that he knew his rights and had been properly advised as to them is very easy to affirm. In fact, as to the claims of error and challenge to the competency of trial counsel, it is easy to see why, at the time of the denial of defendant's motion for a new trial, the trial court commented: "The motions are based on some 21 grounds which in my opinion are more numerous than substantial, . . ."

*By the Court.*—Judgment and order affirmed.

---

[25] "Trial counsel is not required to dilute the persuasiveness of his chosen defense by accompanying it with a defense that is inconsistent as well as untenable. . . ." *Id.* at page 221.