MICHAEL J. MULROY, District Attorney La Crosse County
As a member of the Legislative Council's Special Committee on the Prosecutorial System, you have asked whether article VI, section 4, of the Wisconsin Constitution, which provides in part that "district attorneys, and all other county officers . . . shall be chosen by the electors of the respective counties," prevents the Legislature from establishing either:
1. A multi-county regional district system under which a district attorney is elected by the voters of more than one county and is responsible for the delivery of prosecutorial services throughout the multi-county district; or
2. A prosecutorial system which allows a district attorney who is elected by the voters of one county to provide prosecutorial services on a regular basis to citizens of one or more counties in a designated area of the state.
I have concluded that a multi-county prosecutorial system could be constitutionally established by reorganizing certain counties and joining them solely for prosecutorial purposes, while allowing them to remain separate for the purpose of exercising all other functions of county government. The electors of each county sharing the services of a particular district attorney, however, would have to participate in the selection of their joint prosecutor.
The Wisconsin Constitution, of course, is not a grant of power to the Legislature, but a limitation on the Legislature's plenary power. E.g., State ex rel. McCormack v. Foley, 18 Wis.2d 274,277, 279, 118 N.W.2d 211 (1962); Beardsley v. City of Darlington,14 Wis.2d 369, 372, 111 N.W.2d 184 (1961). The Legislature may exercise all power appropriate to its branch of government which the constitution does not expressly or by necessary implication forbid it to exercise. Id. In determining whether the Legislature may take some action the question is not whether any affirmative constitutional provision authorizes the action, but whether any provision prohibits the elected representatives of the people from enacting as law a proposal which they deem wise and for the public welfare. Northwestern National *Page 6 Bank of Superior v. City of Superior, 103 Wis. 43, 46, 79 N.W. 54
(1899). See Beardsley, 14 Wis.2d at 372.
The provision of the Wisconsin Constitution with which you are concerned appears on its face to prohibit the Legislature from establishing multi-county prosecutorial units. The critical word in the provision is "respective." This word means, essentially, relating to each, each to each or singly considered. Webster'sThird New International Dictionary 1934 (1976); 37A Words andPhrases 19-21 (perm. ed. 1950). Because the provision requires that the electors of each county, singly considered, choose the various county officers, it seems to demand that a district attorney and other county officers be chosen in each county by the electors of that county.
Historically, however, each politically organized county in Wisconsin has not always had its own prosecutor. In the early days of statehood it was common for the Legislature to create what were in effect multi-county prosecutorial units by joining otherwise separate counties for "judicial purposes." Cathcart v.Comstock, 56 Wis. 590, 604, 14 N.W. 833 (1883). One of these shared-prosecutor units continues to exist in Shawano and Menominee Counties. Sec. 59.475, Stats. (1979-80).
The constitutionality of this arrangement was questioned inCathcart. It was contended in that case that the legislative act which organized Lincoln County as a separate political entity was void because it did not provide for the election of a separate district attorney to serve Lincoln County exclusively. Id.56 Wis. at 604. Instead the legislation provided that the territory being organized should "`constitute a separate county, except that the same shall be and remain attached to the county of Marathon for all judicial purposes under the laws of this state.'" Id. This meant that although Lincoln and Marathon Counties each separately elected most of their own county officers, a single district attorney was elected to serve both counties, which were considered to be but a single county for judicial purposes. Id.
The supreme court approved the Legislature's method of establishing a prosecutorial system which did not provide for the election of separate district attorneys in Lincoln and Marathon Counties, respectively, saying: "We apprehend there is no constitutional objection to the two counties remaining united for judicial purposes, *Page 7 
notwithstanding the organization of the new county for other purposes. Such acts have often been passed, and we are not aware that they have ever been questioned." Id.
The court ruled in essence that although the constitution required the election of a district attorney in each county, this meant each county organized for judicial purposes. Two counties organized separately for political purposes which were joined for judicial purposes were but one county for the purpose of electing a district attorney. Thus the election of a single district attorney in what amounted to the single judicial county of Lincoln/Marathon fully complied with the requirement that a district attorney be elected in each county.
Cathcart is a century old, but remains good law. It has never been overruled or limited in any way by subsequent judicial decisions.
Both the legal principles enunciated in Cathcart and the decision itself were recently reaffirmed by the supreme court inPamanet v. State, 49 Wis.2d 501, 182 N.W.2d 459 (1971). Pamanet
did not raise the precise issue which had been decided inCathcart. The questions raised, however, were closely analogous.
The first question was whether the Legislature could constitutionally establish a single county court to jointly serve both Shawano and Menominee Counties. Pamanet, 49 Wis.2d at 504-05. The supreme court answered this question in the affirmative.Id. Citing Cathcart, the court reaffirmed that "a county may be organized for county purposes, and be attached to some other county for judicial purposes." Id. at 505. It ruled further that whether to establish a judicial county including two or more political counties is solely a matter of legislative policy, not of constitutional concern. Id.
The public defender argued that "the statute providing that `the district attorney of Shawano county shall serve as district attorney for Menominee county' conflicts with the constitutional requirement that district attorneys be chosen by the electors of a county once in every two years." Id. at 506. It is important to realize that counsel was not simply resurrecting the same argument made in Cathcart. His contention was not that it was unconstitutional to join Shawano and Menominee Counties for judicial purposes, and to have one district attorney elected to jointly serve the judicially united counties. See Brief for Plaintiff In Error 12 (State No. 4, August Term 1970). His complaint, rather, was that the statute under attack had been *Page 8 
interpreted in Menominee County to mean that only the electors of Shawano County could vote for the Shawano/Menominee County District Attorney. Id. at 9-15. He argued that the electors of Menominee County were deprived of their constitutional right to vote for the joint prosecutor. Id.; Pamanet, 49 Wis.2d at 506.
The supreme court did not reach this issue, probably because the answer to the question presented, which you also raise as your second question, is fairly apparent. The constitution, in requiring that district attorneys be chosen by the electors of the "respective" counties, demands that the electors of each county have a voice in choosing their prosecutor. Two or more counties may be joined for the purpose of electing a district attorney, but electors in all parts of the joined judicial county, i.e., each of the political counties comprising the judicial county, must be allowed to vote for the officers of that county.
The court ruled instead that Pamanet, as the defendant in a criminal case, had no standing to challenge the right of the district attorney to prosecute him, as long as the existence of the office of district attorney was not questioned. Id. at 507. Quoting Cathcart at length with obvious approval, the court reiterated that, consistent with the state constitution, counties could be organized separately for other purposes, but united as one for judicial purposes. Id. at 506. The court then stated that since Shawano and Menominee Counties were legislatively joined for judicial purposes, "there could be no claim that there was not a lawfully established office of district attorney" in the united Shawano/Menominee County judicial unit. Id. at 507.
In holding that a county may be attached to some other county for judicial purposes, Pamanet relied in part on State ex rel.Brown v. Stewart, 60 Wis. 587, 597-98, 19 N.W. 429 (1884), which had found constitutional support for the proposition because article VII, section 11, in speaking of "`each county of this state organized for judicial purposes'" implied that the practice was permissible. Pamanet, 49 Wis.2d at 505 n. 5. That provision of the constitution was repealed by the process of court reorganization in 1977. See 1975 J. R. 13; 1977 J. R. 7. The validity of Pamanet, however, was not affected by the repeal.
As noted earlier, the power of the Legislature is absolute, and does not depend on any specific grant of authority in the constitution. *Page 9 
If the constitution were completely silent on the subject, thus not prohibiting the Legislature from joining counties for judicial purposes, the Legislature would have power to join them.See 20 C.J.S. Counties § 39 at 793. Even if this were not so, though, the validity of Pamanet would not be affected because another provision of the state constitution, article VII, section 12, which remains part of the document, still speaks of counties "organized for judicial purposes." The constitution continues to imply, therefore, that this system of organization is permissible.
Neither do the recent amendments to article VI, section 4, affect the continuing vitality of Cathcart or Pamanet. The amendment which allows counties, at their option, to abolish the elective office of coroner and substitute an appointed medical examiner is inapposite since joining counties for the purpose of electing a prosecutor does not abolish the elective office of district attorney in either county. It merely modifies the boundaries of the county, organized for judicial purposes, from which the district attorney is elected.
The amendment which allows two or more counties to institute a joint medical examiner system does not suggest, under the principle of express inclusion, implied exclusion, that the Legislature has been stripped of its inherent authority to join the state's subdivisions for special purposes. Counties are merely creatures of the Legislature, and have no power except that ceded to them by the state. Dane County v. DH SS,79 Wis.2d 323, 329-30 255 N.W.2d 539 (1977). See State ex rel. Sonneborn v.Sylvester, 26 Wis.2d 43, 56, 132 N.W.2d 249 (1965). Counties have no power to band together, therefore, unless granted that power by the sovereign. If the Legislature also lacked any power except that expressly bestowed by the constitution, perhaps some significance could be attached to a constitutional grant of authority to the counties, but not to the Legislature. Since counties must be expressly granted power, while the Legislature has all power which is not expressly taken away, a constitutional grant of power to counties means no more than that counties have been given a share of the authority the Legislature inherently enjoys.
Both Cathcart and Pamanet were concerned with the joinder of newly created counties to existing counties. All the counties of this state, except Menominee, are now fully organized, however, and there is some question whether fully organized, existing counties can *Page 10 
be attached to other existing counties for governmental purposes.See Palms v. Shawano County, 61 Wis. 211, 216, 21 N.W. 77 (1884) (raising question, but upholding joinder of what is now Langlade County to Shawano County because Langlade was not an organized county at the time of joinder). See also 20 C.J.S. Counties § 39.
As a practical matter this question need not be answered, as it apparently has not been in the century since it was posed, because the Legislature, at its pleasure, may repeal the act organizing a county and destroy it as a legal entity. State v.Mutter, 23 Wis.2d 407, 413, 127 N.W.2d 15, app. dismissed,379 U.S. 201 (1964); 56 Am. Jur. 2d Municipal Corporations § 28 at 92, § 8 at 143-44. Once a county has ceased to exist, the territory which formerly comprised it may be reorganized as a new county. 2 R. Eickhoff and M. Meier, McQuillin, MunicipalCorporations, § 8.17 at 595 (3rd ed., 1979 rev. vol.). Seealso 56 Am. Jur. 2d, § 54 at 111. And the newly organized county, of course, may be attached to an existing county for judicial purposes in complete accord with prior appellate decisions. See generally 20 C.J.S. Counties § 39 at 793 n. 66.
As long as an affected county does not lose territory during reorganization, the Legislature may reorganize the political subdivision it has created without submitting the question to a vote of the area's inhabitants. See Mutter, 23 Wis.2d at 413.See generally Wis. Const. art. XIII, § 7. The changes may be made unilaterally by the Legislature when it is not practical to carry on county government in a particular class of counties in the same manner as it is carried on in other counties, provided there is some reasonable basis for diversity. See State ex rel.Milwaukee County v. Boos, 8 Wis.2d 215, 222, 990 N.W.2d 139
(1959).
Both Cathcart and Pamanet also were concerned with counties which were joined for all judicial purposes. The attached counties shared not only a district attorney, but all other county officials involved in the administration of justice. This does not mean, however, that other counties cannot be joined solely for prosecutorial purposes.
Those cases were concerned with joinder for all judicial purposes simply because, as a matter of fact, the counties whose joinder was challenged had been joined for all judicial purposes. Nothing in the rationale of either decision deals with the propriety of the particular *Page 11 
purposes for which counties may be joined. Both were concerned only with the general question of the permissibility of legislative joinder for any special purpose.
But, to recall and reemphasize the primary principle again, the power of the Legislature is unrestricted absent some express or necessarily implied restriction in the constitution. The important consideration is that no provision of the constitution restricts the Legislature from joining counties for only prosecutorial purposes. Absent such a restriction, "[t]he legislature's power to create municipal corporations implies the power to create them with such limitations as the legislature may see fit to impose." 1 J. Dray, McQuillin, Municipal Corporations, § 3.02c at 208 (3d ed., 1971 rev. vol.). Cf. State ex rel.Hicks v. Stevens, 112 Wis. 170, 179-80, 88 N.W. 48 (1901) (supreme court approved joinder of counties for sole purpose of electing representative in assembly).
Counties joined solely for prosecutorial purposes need not be amalgamated in such a way that the boundaries of the special county conform precisely to those of a circuit court judicial district created pursuant to article VII, section 6. Counties and districts are discrete subdivisions of the state. Stewart,60 Wis. at 596. Usually they are created for different purposes. And absent some constitutional prohibition, it is competent for the Legislature to fix the boundaries of counties differently from the boundaries of districts. See id. See also 20 C.J.S. Counties
§ 39 at 793.
The recent amendment to article VII, section 6, which requires that judicial districts be bounded by county lines, established some limitation on the authority of the Legislature to fix county boundaries independently of the boundaries of judicial districts. Both must run along common lines. But this provision does not require that counties and judicial districts be geographically identical. It at least allows the boundaries of a judicial district to follow the lines of more than one county, and in three cases the Legislature has created circuits which circumscribe more than one political county. Secs. 753.06 (7)(a), (9)(c) and (9)(h), Stats. (1979-80).
Although it is less clear, it reasonably appears that this constitutional provision does not obversely preclude the Legislature from joining counties for prosecutorial purposes in such a way as to circumscribe more than one judicial circuit. There is no reason to *Page 12 
believe that the provision, in referring to county lines, meant to refer to anything other than the geographical lines of the political counties specifically drawn in section 2.01, Stats. (1979-80). There is no reason to think that the constitution contemplated the legal lines of counties joined for special purposes as well. Thus as long as the boundaries of a judicial circuit follow the geographical lines of the political counties comprising a special county organized for prosecutorial purposes, there appears to be no constitutional prohibition against legislative creation of a special county which includes more than one circuit court district.
BCL:TJB