The Warehouse II, LLC,
Plaintiff-Appellant-Petitioner,

v.

State of Wisconsin Department of Transportation,
Defendant-Respondent.

Supreme Court

*No. 2003AP2865. Oral argument September 28, 2005.
—Decided June 6, 2006.*

2006 WI 62

(Also reported in 715 N.W.2d 213.)

For the plaintiff-appellant-petitioner there were briefs by *Alan Marcuvitz, Andrea H. Roschke* and *Michael Best & Friedrich LLP,* Milwaukee, and oral argument by *Alan Marcuvitz.*

For the defendant-respondent the cause was argued by *Pamela Magee,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1. PATIENCE DRAKE ROGGENSACK, J. This case requires us to decide whether Wis. Stat. § 32.28(3)(b) (2003–04)[1] entitles a successful condemnee to litigation expenses when the basis for the circuit court ruling in its favor is that the condemnor failed to negotiate in good faith before issuing the jurisdictional offer.[2] Good faith negotiation prior to issuing a jurisdictional offer to purchase[3] is not merely a technical obligation, but rather, it is a fundamental, statutory requirement necessary to validly commence condemnation and confer jurisdiction on the condemnation commission and the courts. Therefore, because it is uncontested that the Department of Transportation (DOT) did not negotiate in good faith prior to issuing the jurisdictional offer, the DOT did not commence a statutorily sufficient condemnation. As condemnation is a purely statutory procedure, the DOT lacked the right under the statutes to condemn Warehouse II, LLC's (Warehouse) property. Accordingly, Warehouse is entitled to litigation expenses pursuant to § 32.28(3)(b), as set out in § 32.28(1). Therefore, we reverse the decision of the court of appeals and remand to the circuit court to determine reasonable litigation expenses.

---

[1] All subsequent references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

[2] This part of the circuit court's ruling is not contested.

[3] We sometimes refer to the document that is our central focus as the "jurisdictional offer to purchase," as Wis. Stat. § 32.05(3) does, and sometimes we refer to it simply as the "jurisdictional offer," as Wis. Stat. § 32.05(4) and (5) do.

## I. BACKGROUND

¶ 2. The facts are undisputed. The DOT commenced condemnation proceedings against property owned by Warehouse. After the DOT issued its jurisdictional offer to purchase, Warehouse challenged the condemnation under Wis. Stat. § 32.05(5) in the Winnebago County Circuit Court,[4] asserting that because the DOT had failed to negotiate in good faith prior to issuing the jurisdictional offer, it lacked the right to condemn Warehouse's property.

¶ 3. The circuit court held an evidentiary hearing; ruled that the DOT had not negotiated in good faith; and concluded that the DOT's jurisdictional offer to purchase was invalid and all subsequent DOT actions were null and void.[5] It awarded Warehouse litigation expenses pursuant to Wis. Stat. § 32.28(3)(b). Warehouse submitted an itemization of litigation expenses to the DOT and the DOT refused to pay. Warehouse then moved the circuit court to order the DOT to pay. However, after consideration of the parties' positions, the circuit court accepted the DOT's contention that the circumstances of the case did not fall under § 32.28(3)(b), so no

---

[4] Judge William H. Carver presided.

[5] The pertinent language from the circuit court's Findings of Fact, Conclusions of Law, and Order for Judgment is as follows:

> 1. Prior to the issuance of the Jurisdictional Offer, Defendant did not enter into good faith negotiations, as required by sec. 32.05(2a), Stats.

> 2. Because required good faith negotiations are a jurisdictional prerequisite to the exercise of eminent domain power under sec. 32.05, Stats., the absence of such negotiations causes the Jurisdictional Offer and all actions undertaken thereafter by Defendant, including the Award of Damages, to be null and void.

litigation expenses were due. Warehouse appealed; the court of appeals affirmed; and we granted Warehouse's petition for review.

## II. DISCUSSION

### A. Standard of Review

¶ 4. Our review requires us to construe a statute and apply it to the facts of the case. Statutory interpretation and the application of a statute to the facts found are questions of law that we review without deference to the circuit court. *State v. Reed,* 2005 WI 53, ¶ 13, 280 Wis. 2d 68, 695 N.W.2d 315. However, we benefit from the analyses of the previous courts' decisions. *State v. Cole,* 2003 WI 59, ¶ 12, 262 Wis. 2d 167, 663 N.W.2d 700. Whether a defect in failing to follow a statutory directive is fundamental or technical is also a question of law for our independent review. *Schaefer v. Riegelman,* 2002 WI 18, ¶ 25, 250 Wis. 2d 494, 639 N.W.2d 715.

### B. Jurisdictional Offer

¶ 5. Wisconsin Stat. § 32.05(2a)[6] requires that a condemnor negotiate with the property owner in good faith before issuing a jurisdictional offer to purchase. It is not contested for purposes of this review that the DOT did not do so.

---

[6] Wisconsin Stat. § 32.05(2a) states in relevant part:

Before making the jurisdictional offer ... the condemnor shall attempt to negotiate personally with the owner or one of the owners or his or her representative of the property sought to be taken for the purchase of the same.

¶ 6. In *Arrowhead Farms, Inc. v. Dodge County,* 21 Wis. 2d 647, 124 N.W.2d 631 (1963), we discussed the effect of failing to negotiate in good faith before making a jurisdictional offer to purchase. *Id.* at 651–52. We explained that "such negotiation is a necessary condition of conferring jurisdiction upon the administrative body and the court to determine just compensation . . . ." *Id.* at 652. We grounded the requirement of good faith negotiation in a primary purpose of statutory condemnation: to provide just compensation to the property owner. *Id.* at 651.

¶ 7. In *Herro v. Natural Resources Board,* 53 Wis. 2d 157, 192 N.W.2d 104 (1971), we reaffirmed that a failure to negotiate before issuing the jurisdictional offer is "a jurisdictional defect." *Id.* at 171 (citations omitted). We explained the nexus between good faith negotiation prior to issuing a jurisdictional offer and the ability to exercise the power of eminent domain:

> [U]nless there is a bona fide attempt on the part of the condemnor to induce the owner to sell the land at a reasonable figure, the condition under which the power is granted is not fulfilled, and in such case any attempted exercise of eminent domain is unauthorized and consequently void and of no effect . . . .

*Id.* (quoting 6 Nichols, Eminent Domain § 24.62(1) at 85 (3d ed.).

¶ 8. In examining the negotiation efforts made in *Herro,* we reiterated that ch. 32 provides the exclusive procedure in condemnation actions, including the requirement to negotiate before making a jurisdictional offer to purchase. *Herro,* 53 Wis. 2d at 171. We explained that we strictly construe the portions of ch. 32 that apply to condemnation by requiring that the condemnor complete all of the statutory steps because

condemnation is in derogation of the common law. *Id.* (citing *City of Madison v. Tiedeman,* 1 Wis. 2d 136, 83 N.W.2d 694 (1957) and *Schroedel Corp. v. State Highway Comm'n,* 34 Wis. 2d 32, 148 N.W.2d 691 (1967)).

■

¶ 9. It cannot be disputed that the DOT must issue a jurisdictionally sufficient jurisdictional offer to purchase before it has the statutory right to proceed with the condemnation of property. Wisconsin Stat. § 32.05(4) establishes that requirement. It states, in relevant part:

> How notice of jurisdictional offer is given. The giving of such notice is a jurisdictional requisite to a taking by condemnation. . . . Such notice shall be called the "jurisdictional offer."

■

¶ 10. However, not every defect in a jurisdictional offer to purchase is a jurisdictional defect. Jurisdictional defects are fundamental defects. *Schaefer,* 250 Wis. 2d 494, ¶ 25. Other defects in a jurisdictional offer to purchase may be merely technical defects. *See id.* In order to rise to the level of a fundamental defect, the error must go to the "primary purpose" underlying the statute that required the action. *See id.,* ¶¶ 26, 28 (citing *Am. Family Mut. Ins. Co. v. Royal Ins. Co. of Am.,* 167 Wis. 2d 524, 533, 481 N.W.2d 629 (1992); *Schlumpf v. Yellick,* 94 Wis. 2d 504, 288 N.W.2d 834 (1980)). In contrast to a fundamental defect, a technical defect does not go to the primary purpose underlying the statutory process, and if it does not prejudice the opposing party, it is insufficient to cause dismissal of the action. *Schaefer,* 250 Wis. 2d 494, ¶ 27 (citing *Gaddis v. La Crosse Prods., Inc.,* 198 Wis. 2d 396, 407, 542 N.W.2d 454 (1996)).

¶ 11. The analysis of whether a defect is fundamental or technical is important to our consideration of the DOT's argument that *Wieczorek v. City of Franklin*, 82 Wis. 2d 19, 260 N.W.2d 650 (1978), controls the outcome in this case. In *Wieczorek*, the property owners contested the city's right to condemn their property. *Id.* at 20. After they had presented their case, the circuit court granted judgment in the property owners' favor because of a defect in the jurisdictional offer to purchase. *Id.* at 20–21. The defect was the failure to include a "proposed date of occupancy," as Wis. Stat. § 32.05(3)(c) requires. *Id.* at 21. The Wieczoreks claimed the right to litigation expenses based on that defect. *Id.* at 22. The city argued that the jurisdictional offer to purchase had only a "procedural defect" that could be cured by issuing an amended jurisdictional offer and therefore, the Wieczoreks had no right to attorney fees. *Id.* at 22. While we did not directly state that the failure to indicate a proposed date of occupancy was a procedural defect, we quoted *United States v. 4.18 Acres of Land*, 542 F.2d 786 (9th Cir. 1976) with approval where a procedural error was held to be insufficient to sustain an award of attorney fees under a federal condemnation statute. *Wieczorek*, 82 Wis. 2d at 25.

■

¶ 12. In *City of Racine v. Bassinger*, 163 Wis. 2d 1029, 473 N.W.2d 526 (Ct. App. 1991), the court of appeals explained that it was possible to have a variety of procedural defects in condemnation proceedings, some of which were jurisdictional and some of which were not. The court of appeals quoted the circuit court with approval as saying:

> The procedural steps which [in other cases] have been found to be jurisdictional in condemnation proceedings

all have two significant features in common. *The first* is that they are contained within the particular statute [that] sets forth the condemnation procedure, that is, the things [that] must be done to have and to exercise the power to acquire property by eminent domain in each particular case. *The second* is that the statute expressly or impliedly denies the power of the condemnor to act unless the particular step is taken, and no other statutory remedy is provided for a failure to perform the particular step. The only remedy [that] exists is to challenge the condemnation itself under Sec. 32.05(5) or 32.06(5), Wis. Stats.

*Id.* at 1036–37 (footnote omitted; emphasis in original). This reasoning is persuasive. When we apply it to the procedural error in *Wieczorek,* we conclude that failing to include a proposed date of occupancy is not a jurisdictional defect. While Wis. Stat. § 32.05(3)(c) requires the jurisdictional offer to indicate a proposed date of occupancy, that task relates only to stating a "proposed date." Indicating a proposed date of occupancy goes to neither the condemnor's power to act nor to a primary purpose of the condemnation procedure, providing just compensation to the property owner. *See Arrowhead Farms,* 21 Wis. 2d at 651–52.

¶ 13. Therefore, failing to state a proposed date of occupancy is not comparable to failing to enter into good faith negotiation before issuing a jurisdictional offer. As we have explained, a primary purpose of negotiation is to achieve a consensual sale of the property with fair compensation to the property owner. *See Herro,* 53 Wis. 2d at 171–73. Good faith negotiation facilitates sales that are not forced by a court decision based on the power of eminent domain, but rather, consensual sales arrived at through negotiation. Be-

cause achieving fair compensation for the property owner is the driving force behind the condemnation statutes, failing to negotiate prior to issuing a jurisdictional offer strikes at the heart of that legislative purpose. By contrast, failing to list a proposed date of occupancy does not undermine the primary legislative purpose that drives the condemnation statutes: achieving just compensation for the property owner. Furthermore, the Wieczoreks were not prejudiced by the lack of a proposed date of occupancy in the jurisdictional offer. Accordingly, we conclude that the defect in the jurisdictional offer to purchase in *Wieczorek* was only a technical, procedural defect. As such, it had no effect on the statutory right to condemn the property and does not control our decision in this matter.

C. Wisconsin Stat. § 32.28(3)(b)

¶ 14. Wisconsin Stat. § 32.28(3)(b) is a fee-shifting statute. We interpret it to determine whether a successful jurisdictional challenge to a jurisdictional offer to purchase entitles the property owner to litigation expenses under § 32.28(3)(b). To ascertain the meaning of a statute, we employ well-known principles of statutory interpretation. Our purpose is to "faithfully give effect to the laws enacted by the legislature." *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. We defer to the policy choices of the legislature and we assume that the legislature's intent is expressed in the statutory language it chose. *Id.,* ¶ 44.

¶ 15. "Statutory language is given its common, ordinary, and accepted meaning, except that technical

or specially-defined words or phrases are given their technical or special definitional meaning." *Id.,* ¶ 45. If the meaning of the language used in a statute is plain, we ordinarily stop our inquiry. *Id.*

¶ 16. Context and the structure of a statute in which the operative language appears are important to determining a statute's plain meaning. Therefore, statutory language is interpreted in relation to the surrounding language of the statute. *Id.,* ¶ 46. Statutory language also should be read "to give reasonable effect to every word, in order to avoid surplusage." *Id.* If this analysis yields a plain and clear statutory meaning, then the statute is unambiguous, and we apply it according to this ascertained meaning. *Id.*

¶ 17. However, a statute is ambiguous if the statutory language reasonably gives rise to two or more different meanings. *Id.,* ¶ 47. A statute that is plain on its face may also be made ambiguous by its interaction with other statutes. *State v. White,* 97 Wis. 2d 193, 198, 295 N.W.2d 346 (1980). If a statute is ambiguous, we may turn to extrinsic sources, such as legislative history, to ascertain the meaning of the statute. *Kalal,* 271 Wis. 2d 633, ¶ 48.

¶ 18. Wisconsin Stat. § 32.28(3)(b) states in relevant part:

> In lieu of costs under ch. 814, litigation expenses shall be awarded to the condemnee if:
>
> . . . .
>
> (b) The court determines that the condemnor does not have the right to condemn part or all of the property described in the jurisdictional offer or there is no necessity for its taking.

Section 32.28(3)(b) provides for litigation expenses when a property owner prevails in proving either that the condemnor does not have "the right to condemn" or that "there is no necessity for its taking." Whether Warehouse has proven that the DOT did not have the "right to condemn" is at issue here.

■■

¶ 19. We begin by assessing the positions of both parties. We conclude that it is reasonable to interpret the fee-shifting provisions of Wis. Stat. § 32.28(3)(b), as Warehouse advocates, as requiring a court determination that the condemnor does not have the "right to condemn" a particular property at that time. Under Warehouse's interpretation, a successful condemnee challenging a particular condemnation could receive litigation expenses, even when the condemnor could eventually issue a jurisdictional offer that is sufficient to condemn the property. This interpretation turns on the concept that only a jurisdictional offer issued after good faith negotiation is statutorily sufficient to support the power of eminent domain. Stated otherwise, good faith negotiation is itself a prerequisite to a condemnor's statutory right to condemn.

¶ 20. We also conclude that it is reasonable to interpret the "right to condemn," as the DOT advocates, to require a court determination that the condemnor permanently lacks the ability to condemn a particular property, before litigation expenses can be awarded. Under that interpretation, the only types of claims for which successful parties would receive litigation expenses under Wis. Stat. § 32.28(3)(b) would be those in which a court determined the condemning authority permanently lacked some prerequisite to an eminent domain taking, e.g., an invalid purpose for the taking or an inability to condemn the property in question.

Accordingly, we conclude that the term "right to condemn" of § 32.28(3)(b) is ambiguous because it can reasonably be interpreted both ways. However, we also conclude that these two interpretations are not necessarily mutually exclusive. In our view, the effect of the claimed deficiency in the procedure controls the analysis.

¶ 21. It is undisputed that Wis. Stat. § 32.28(3)(b) is a fee-shifting statute. When we examine the context in which the legislature placed § 32.28(3)(b), we can better ascertain the meaning of "the right to condemn." Section § 32.28(1) states:

> In this section, "litigation expenses" means the sum of the costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees necessary to prepare for or participate in actual or anticipated proceedings before the condemnation commissioners, board of assessment or any court under this chapter.

It sets out a more expansive list of expenses that a condemnee could incur than those listed in § 32.28(2). Section 32.28(2) states:

> Except as provided in sub. (3), costs shall be allowed under ch. 814 in any action brought under this chapter. If the amount of just compensation found by the court or commissioners of condemnation exceeds the jurisdictional offer or the highest written offer prior to the jurisdictional offer, the condemnee shall be deemed the successful party under s. 814.02(2).

¶ 22. Wisconsin Stat. § 32.28(2) permits only the usual ch. 814 costs. However, paras. (3)(a)–(i) of § 32.28 list circumstances when the general rule of awarding only ch. 814 costs to the prevailing party is not applied

and the litigation expenses set out in § 32.28(1)[7] are awarded. The occasions where the property owner is awarded more expenses incurred in contesting an ac-

---

[7] The other sections of subsection (3) identify the following particular *types* of actions and circumstances for which fee-shifting occurs:

(a) The proceeding is abandoned by the condemnor;

. . . .

(c) The judgment is for the plaintiff in an action under s. 32.10;

(d) The award of the condemnation commission under s. 32.05(9) or 32.06(8) exceeds the jurisdictional offer or the highest written offer prior to the jurisdictional offer by at least $700 and at least 15% and neither party appeals the award to the circuit court;

(e) The jury verdict as approved by the court under s. 32.05(11) exceeds the jurisdictional offer or the highest written offer prior to the jurisdictional offer by at least $700 and at least 15%;

(f) The condemnee appeals an award of the condemnation commission which exceeds the jurisdictional offer or the highest written offer prior to the jurisdictional offer by at least $700 and at least 15%, if the jury verdict as approved by the court under s. 32.05(10) or 32.06(10) exceeds the award of the condemnation commission by at least $700 and at least 15%;

(g) The condemnor appeals the award of the condemnation commission, if the jury verdict as approved by the court under s. 32.05(10) or 32.06(10) exceeds the jurisdictional offer or the highest written offer prior to the jurisdictional offer by at least $700 and at least 15%;

(h) The condemnee appeals an award of the condemnation commission which does not exceed the jurisdictional offer or the highest written offer prior to the jurisdictional offer by 15%, if the jury verdict as approved by the court under s. 32.05(10) or 32.06(10) exceeds the jurisdictional offer or the highest written offer prior to the jurisdictional offer by at least $700 and at least 15%; or

(i) The condemnee appeals an assessment of damages and benefits under s. 32.61(3), if the judgment is at least $700 and at least 15% greater than the award made by the city.

tion taken by a condemnor are all directed at actions that significantly short-change the property owner in some respect. For example, in paras. (3)(d)-(i), if the compensation offered by the condemnor was at least $700 and 15% too low, the condemnee "shall" be awarded the reasonable litigation expenses incurred. In paras. (3)(a) and (3)(c), litigation expenses are awarded when the condemnor either started a condemnation it later determined it should not have begun or the condemnor did not commence condemnation proceedings when it should have done so. Paragraph (3)(b) is part of that legislative decision to fee-shift, but it sets out circumstances that trigger fee-shifting in more general terms, e.g., when the court concludes that the condemnor lacks "the right to condemn" or that there is "no necessity for its taking." These paragraphs of subsec. (3) level the playing field by shifting the obligation to pay expenses that may have been unnecessary if the condemnor had shouldered its responsibilities properly.

¶ 23. The right to condemn that is at issue here is also used in Wis. Stat. §§ 32.05(5) and 32.06(5). There, the legislature established claims for relief when the condemnor does not have the right to condemn. Section 32.05(5) pertains to the right to condemn for sewers and transportation facilities, the circumstances in which Warehouse's claim arises. All of these rights are statutory rights.

¶ 24. Wisconsin Stat. § 32.05(5) states in relevant part:

> If an owner desires to contest the right of the condemnor to condemn the property described in the jurisdictional offer, for any reason other than that the amount of compensation offered is inadequate, the owner may . . . commence an action in the circuit court . . . .

Section 32.05(5) uses terms identical to that of Wis. Stat. § 32.28(3)(b) regarding the right to condemn, i.e., the "right" of the condemnor to condemn the property described in the jurisdictional offer. It permits a condemnee to challenge that statutory right for reasons other than an offer of inadequate compensation. As we explained above, paras. (3)(d)–(i) of § 32.28 all involve inadequate compensation. Paragraphs (3)(a)–(c) do not. The general statement "for any reason other than" in § 32.05(5), must be read to exclude from claims that may be brought under § 32.05(5) those claims described in paras. (3)(d)–(i). That leaves para. (3)(a), abandonment, and para. (3)(b), the lack of the "right to condemn," that could fall within the claims permitted by § 32.05(5).[8] We note the parallel wording in the "right" to condemn in § 32.05(5) and the "right" to condemn in § 32.28(3)(b). They are both part of a common statutory scheme, and therefore we assume they refer to the same quality. *See City of Milwaukee v. Milwaukee County,* 27 Wis. 2d 53, 59, 133 N.W.2d 393 (1965). This right appears to us to be a statutory right that cannot be invoked without jurisdiction.

¶ 25. We now turn to legislative history underlying the eminent domain statutes to see if it sheds further light on whether Wis. Stat. § 32.28(3)(b) provides litigation expenses when the jurisdictional offer is invalid due to a failure to negotiate in good faith prior to issuing it. The legislative history, particularly in regard to the 1977 revision to ch. 32, demonstrates that

---

[8] We do not address Wis. Stat. § 32.28(3)(c) actions for inverse condemnation that are brought under Wis. Stat. § 32.10, but we note the court of appeals has concluded that actions under § 32.10 are to receive litigation expenses under § 32.28(3)(c). *Maxey v. Redevelopment Auth. of Racine,* 120 Wis. 2d 13, 20, 353 N.W.2d 812 (Ct. App. 1984).

one of the legislature's purposes in that revision was to increase the types of circumstances in which condemnees would receive litigation expenses.

¶ 26. We begin with the pre-1977 version of the statute relating to litigation expenses in condemnation actions. The final sentence of Wis. Stat. § 32.05(5) (1973), was added by ch. 244, Laws of 1971. It had limited applicability as it provided:

> If the *final judgment* of the court is that the condemnor cannot condemn the property described in the jurisdictional offer, the judgment shall also award the owner such sum as will in the opinion of the court reimburse the owner for his reasonable costs, disbursements and expenses including reasonable attorney and engineering fees actually incurred because of the action of the condemnor, but the judgment shall not, in addition thereto, award the owner taxable costs and disbursements pursuant to ch. 271.

(Emphasis added.) In November of 1977, Assembly Bill 1077 was introduced. It removed the above sentence from § 32.05(5) and created Wis. Stat. § 32.28, "Costs." The new section specified what was to be included in litigation costs, § 32.28(1), and that generally costs in eminent domain proceedings were to follow the usual rules for costs set out in ch. 814, § 32.28(2).

¶ 27. The 1977 revisions also created nine exceptions to the general rule that only ch. 814 costs are allowed. They closely parallel the nine paragraphs of Wis. Stat. § 32.28(3) that exist today. The exceptions to the general rule on costs expanded the opportunities for condemnees to be made whole when they were successful in condemnation disputes. For example, the legislature expanded fee-shifting to condemnees' challenges in other than transportation matters, pursuant to Wis. Stat. § 32.06(5), as a note that appeared in the body of

the original bill indicates.[9] Additionally, while the former provision in Wis. Stat. § 32.05(5) granted discretion to the circuit court to award litigation expenses, the revised provision established a mandate[10] that those expenses be paid when the circumstances in any paragraph of subsec. (3) of § 32.28 are met. Furthermore, the former provision in § 32.05(5) required a "final judgment" before the circuit court had the discretion to award litigation expenses. In contrast, the revised statutory language of § 32.28(3)(b) provides for litigation expenses if "[t]he court determines that the condemnor does not have the right to condemn part or all of the property described in the jurisdictional offer or there is no necessity for its taking," thereby eliminating the requirement that the judgment be final before the right to litigation expenses arises. The version of § 32.28(3)(b) created under the 1977 revision is not different in any material respect from the current statute.[11]

¶ 28. The legislature recognized that its expansion of fee-shifting opportunities would have a fiscal impact on those entities that had the power of eminent

[9] "Present s. 32.05(5) requires the award of reasonable costs, disbursements and expenses including attorney and engineering fees in such cases. This [bill] extends the rule to actions under s. 32.06 . . . ." Legislative Reference Bureau Drafting Record for 1977 A.B. 1077.

[10] The word "shall" is normally understood to be mandatory. *C.A.K. v. State,* 154 Wis. 2d 612, 621–622, 453 N.W.2d 897 (1990) (citation omitted).

[11] The only difference between the language in the 1977 version and the current version is the change in the wording from subsec. (3): "the court shall award litigation expenses" (1977) to subsec. (3): "litigation expenses shall be awarded," pursuant to 1995 Wis. Act 140.

domain. The drafting record indicates the legislature considered the following:

> *Litigation.* Local governments may also incur significant increased costs as a result of the changes which specify four circumstances in which a condemnee may receive reasonable "litigation expenses." Most of this cost increase is likely to occur from appealed cases where the condemnee receives an award from either the condemnation commission or circuit court that exceeds the jurisdictional offer by at least 10%. The size of this increase is not possible to determine. . . .
>
> In addition, the broader coverage of the sections relating to abandoned condemnation proceedings and litigation which challenges either the condemnor's authority to condemn or the necessity of the taking also is likely to increase local government litigation costs. . . .
>
> . . .
>
> The increase in litigation costs for the Division of Highways, Department of Transportation is estimated in excess of $2,000,000. This calculation is based on increased payments to owners and increased payments for owners' attorneys and appraisers. As a result of discussions with members of the Wisconsin Attorney General's staff, we believe that a substantial increase in litigation activity should be anticipated.

DOT Fiscal Estimate to 1977 A.B. 1077, at 6, 9.

¶ 29. The 1977 amendments demonstrate a legislative policy choice to encourage condemnors to take seriously commencing a condemnation action, to make fair jurisdictional offers and to carefully follow the condemnation statutes. We have previously recognized these policies that underlie eminent domain legislation. *Redevelopment Auth. of Green Bay v. Bee Frank, Inc.,* 120 Wis. 2d 402, 411–12, 355 N.W.2d. 240 (1984).

¶ 30. In *Bee Frank,* we held that under Wis. Stat. § 32.28(3)(d) the tenant-owner of immovable fixtures that were taken during the condemnation of the property owner's building was entitled to litigation expenses when the condemnation commission's award for immovable fixtures exceeded the tenant's immovable fixtures portion of the jurisdictional offer. *Bee Frank,* 120 Wis. 2d at 412–13. In *Bee Frank,* we broadly interpreted para. (3)(d), holding that the legislature had a dual intent in enacting that paragraph: "(1) to discourage the condemnor from making inequitably low jurisdictional offers and (2) to make the condemnee, who meets the statutory requirements, whole." *Id.* at 411.

¶ 31. In *Bee Frank,* we relied heavily on *Standard Theatres, Inc. v. DOT,* 118 Wis. 2d 730, 349 N.W.2d 661 (1984), in which we reversed the court of appeals' reduction of the circuit court's award of attorney fees under Wis. Stat. § 32.28. In explaining our decision, we said:

> When the owner is deprived of property against his or her will, it is obvious that the owner is not justly compensated for his or her property if the owner must initially be forced to litigate in order to obtain the full value of the land, and then must pay for his or her attorney fees from this full value. The attorney fees incurred here were, after all, necessitated by the owner's attempt to get the fair value of the owner's real estate. Therefore, one must start from the premise that the owner is to be compensated for the attorney fees. In other words, the purpose behind the statute is to make the owner "whole," through compensating the owner for the value of the property taken and for the attorney fees incurred in attempting to obtain this value.

*Id.* at 744–45.

¶ 32. The *Bee Frank* decision expanded that explanation:

> While *Standard Theatres* specifically dealt with attorney fees, its holding is clearly applicable to the other litigation expenses, enumerated in sec. 32.28(1), Stats. In permitting recovery of litigation expenses, the legislature sought to provide the condemnee with just compensation by ensuring that he or she would not be forced to use part of the award to pay for litigation expenses after a successful appeal.

*Bee Frank,* 120 Wis. 2d at 412. *Bee Frank* also reinforced our decision to liberally construe statutory provisions regarding compensation for eminent domain takings to favor the property owner whose property is taken against his or her will. *Id.* at 409–10 (citing *Aero Auto Parts, Inc. v. DOT,* 78 Wis. 2d 235, 241, 253 N.W.2d 896 (1977)). Our liberal construction of condemnation statutes in areas favoring property owners is grounded in our concern for the property owner when an entity exercises the "extraordinary power" of eminent domain. *Bee Frank,* 120 Wis. 2d at 409.

¶ 33. Accordingly, we conclude that the overall purpose of the 1977 amendments was to provide more specific and concrete opportunities to recover litigation expenses for condemnees with legitimate challenges to the actions of condemnors. This purpose is driven by the legislative decision to make condemnees whole through lightening the financial burden of successful challenges and to discourage inequitable jurisdictional offers during the exercise of the extraordinary power of condemnation.[12]

---

[12] This policy choice also is evidenced by the abandonment provision, Wis. Stat. § 32.28(3)(a), where a condemnor could later commence an action to condemn the same property.

¶ 34. Therefore, we conclude that Wis. Stat. § 32.28(3)(b) applies when the condemnor's jurisdictional offer to purchase was not made after good faith negotiations, thereby causing a jurisdictional defect in the jurisdictional offer to purchase. This jurisdictional defect causes the condemnor to lack the statutory right to condemn. We note that if. a condemnee were denied litigation expenses for a successful challenge to the negotiation requirement, there would be little to discourage a condemnor from making a low-ball offer to save money. When the property owner filed a court action claiming that the condemnor did not have the "right to condemn" the property, the condemnor could then negotiate with the property owner and make a fair offer, with no added expense to the condemnor, but with a cost to the property owner. The obligation to negotiate with the property owner before making a jurisdictional offer is a valuable right of the property owner, *Kultgen v. Mueller,* 3 Wis. 2d 346, 349, 88 N.W.2d 687 (1958), for which the property owner should not be forced to incur unrecoverable attorney fees and other court costs to actualize. And finally, were we to conclude, as the DOT requests, we would not be complying with a primary purpose of the 1977 revision to ch. 32.[13]

---

[13] The dissent contends that because we interpreted the phrase "cannot condemn" to mean "has no right to condemn" in *Wieczorek v. City of Franklin,* 82 Wis. 2d 19, 260 N.W.2d 650 (1978), *Wieczorek* controls the outcome of this case. Dissent, ¶ 42. We disagree. First, the defect in *Wieczorek* was merely a technical defect, not a jurisdictional defect, as is present here. Second, we interpreted a different statute in *Wieczorek,* as we have explained above. Third, the Legislative Reference Bureau's Analysis anticipated an increase in litigation costs due to the increased number of circumstances under which a property owner could contest the right to condemn under the 1977

## III. CONCLUSION

¶ 35. In sum, we conclude that good faith negotiation prior to issuing a jurisdictional offer to purchase is not merely a technical obligation, but rather, it is a fundamental, statutory requirement necessary to validly commence condemnation and confer jurisdiction on the condemnation commission and the courts. Therefore, because it is uncontested that the DOT did not negotiate in good faith prior to issuing the jurisdictional offer, the DOT did not commence a statutorily sufficient condemnation. As condemnation is purely a statutory procedure, the DOT lacked the right under the statutes to condemn Warehouse's property. Accordingly, Warehouse is entitled to litigation expenses pursuant to Wis. Stat. § 32.28(3)(b), as set out in § 32.28(1). Therefore, we reverse the decision of the court of appeals and remand to the circuit court to determine reasonable litigation expenses.

*By the Court.*—The decision of the court of appeals is reversed and the cause remanded.

¶ 36. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). I agree with the circuit court and the court of appeals: Warehouse II does not recover litigation expenses.

¶ 37. As the majority opinion correctly explains, the primary purpose of the condemnation statute is to achieve just compensation. Litigation expenses are not included in just compensation.[1] If litigation expenses are to be awarded, the legislature must expressly so provide.

revisions. Our decision is consistent with that legislative policy choice.

[1] *Martineau v. State Conservation Comm'n,* 54 Wis. 2d 76, 85, 194 N.W.2d 664 (1972).

¶ 38 This is a statutory interpretation case. The issue is what Wis. Stat. § 32.28(3)(b) means when it awards a condemnee litigation expenses when the condemnor "does not have the right to condemn" the property. The majority opinion concludes that "does not have the right to condemn" means the condemnor committed a "jurisdictional" defect in complying with Wis. Stat. § 32.05 rather than a "technical" defect in bringing the condemnation proceedings. I conclude that the phrase means that the condemnor does not have the power to condemn the property even if it fully complied with the steps set forth in § 32.05.

¶ 39. The instant case involves litigation expenses when the condemnee objected to the condemnation on the ground that the condemnor did not attempt to negotiate before the *notice of the jurisdictional offer.* The objection was valid, the condemnation proceedings were terminated, and the condemnor had to begin condemnation proceedings anew.

¶ 40. The Department of Transportation began a new condemnation proceeding and has successfully condemned Warehouse II's property. The parties currently dispute the amount of the condemnation award. Warehouse II asks the State to pay for litigation expenses Warehouse II incurred to delay the inevitable condemnation. Unfortunately, the majority opinion obliges. Many of the condemnee's litigation expenses incurred in the first proceeding, for which Warehouse II seeks reimbursement, probably allowed Warehouse II to avoid expenses in the second proceeding.

¶ 41. I disagree with the majority opinion that the condemnee is entitled to litigation expenses under Wis. Stat. § 32.28(3)(b) (2003–04) when the condemnation proceedings are terminated for the condemnor's failure to attempt to negotiate, a correctable defect.

106

¶ 42. *Wieczorek v. City of Franklin,* 82 Wis. 2d 19, 260 N.W.2d 650 (1978), interpreting Wis. Stat. § 32.05(5) (1971), governs this case.[2] *Wieczorek* held that when a jurisdictional offer is defective and the condemnation proceedings are terminated, the condemnor can bring condemnation proceedings anew. No attorney fees may be awarded to the landowner. Applying *Wieczorek,* I conclude that Warehouse II is not entitled to litigation expenses under Wis. Stat. § 32.28(3)(b) (2003–04).

¶ 43. The majority opinion fails to overturn the *Wieczorek* case or successfully distinguish *Wieczorek* from the present case. Furthermore, the majority opinion fails to distinguish the present statutes from the statutes interpreted in *Wieczorek.*

¶ 44. In interpreting the current statute, the majority opinion is internally contradictory and contradicts the text of the statute. The majority opinion muddies the law and will foster litigation. I therefore cannot join the majority opinion.

¶ 45. The majority opinion errs in at least five ways.

¶ 46. **ERROR 1.** The majority opinion errs in attempting to differentiate between jurisdictional de-

---

[2] Wisconsin Stat. § 32.05(5) (1971) provided in pertinent part: "If the final judgment of the court is that the condemnor cannot condemn the property . . . , the judgment shall also award the owner such sum as will in the opinion of the court reimburse the owner for his reasonable costs, disbursements and expenses, including reasonable attorney and engineering fees . . . ."

The court of appeals in *Toombs v. Washburn County,* 119 Wis. 2d 346, 350 N.W.2d 720 (Ct. App. 1984), viewed *Wieczorek v. City of Franklin,* 82 Wis. 2d 19, 260 N.W.2d 650 (1978), as applicable to the current statute.

fects and technical defects for purposes of condemnation proceedings and for purposes of awarding the condemnee litigation expenses.

¶ 47. According to the majority opinion, if a defect in the condemnation proceedings is jurisdictional (as the majority opinion classifies a failure to negotiate), the condemnation proceeding terminates and the condemnee is entitled to litigation expenses.

¶ 48. If the defect is technical (as the majority opinion classifies a failure to state the proposed date of occupancy, the defect in *Wieczorek*), the condemnation proceeding terminates and the condemnee is not entitled to litigation expenses. The majority opinion thus limits *Wieczorek* to technical defects.[3]

¶ 49. Whether a jurisdictional defect or technical defect, a defect means that the condemnation proceedings cannot proceed unless the defect is corrected. The only difference between a jurisdictional defect and a technical defect seems to be that a condemnee can receive litigation expenses when a court labels the defect jurisdictional.

¶ 50. There are several problems with the majority opinion's jurisdictional/technical analysis.

A

¶ 51. The majority opinion's use of the words "jurisdiction" and "jurisdictional defect" is obscure.

---

[3] After concluding that the defect in *Wieczorek* was technical, the majority proceeds to the second step of its jurisdictional/technical analysis and declares that "the Wieczoreks were not prejudiced by the lack of a proposed date of occupancy in the jurisdictional offer." Majority op., ¶ 13. Did the majority review the record, or even the briefs, from *Wieczorek?* Was this issue even litigated? The majority has no way of knowing whether the Wieczoreks were prejudiced.

¶ 52. "Jurisdictional defect" has many possible meanings, with different consequences. Is the majority opinion using the words "jurisdictional defect" to mean the court's competence to proceed?[4] Or is the majority opinion using the words to mean personal jurisdiction over the parties? Or is the majority opinion using the words to mean something else?

¶ 53. Not only is the majority opinion's meaning of the words "jurisdictional defect" unclear, but it is doubtful that the cases cited by the majority use the words "jurisdictional defect" in the same way that the majority opinion does.

¶ 54. The majority opinion relies on *Schaefer v. Riegelman*, 2002 WI 18, 250 Wis. 2d 494, 639 N.W.2d 715, to distinguish between jurisdictional and technical defects. *Schaefer* is not a condemnation case; it is a legal malpractice action. *Schaefer* involved a defectively signed summons and complaint. The summons and complaint were essential to commence the malpractice action.[5] The question before the circuit court in *Schaefer* was whether it had jurisdiction over the action when the summons and complaint were defective. The supreme court concluded that the defect deprived the circuit court of jurisdiction.

¶ 55. In the present case the condemnee's action was properly commenced in circuit court by summons and complaint. No one challenges the circuit court's personal jurisdiction over the parties or subject matter

---

[4] Starting in 1981, *Eberhardy v. Circuit Court for Wood County*, 102 Wis. 2d 539, 552, 307 N.W.2d 881 (1981), the court has stated numerous times that a circuit court has subject matter jurisdiction, as a matter of state constitutional law, in all matters. Thus, the majority opinion must not be referring to subject matter jurisdiction.

[5] *See* Wis. Stat. § 801.02(1)-(2) (requiring a summons and complaint to commence a civil action).

jurisdiction over the condemnee's suit against the Department of Transportation.

¶ 56. The issue before the circuit court in the instant case was a question of substantive condemnation law, namely, whether the condemnation proceedings must be terminated because the condemnor failed to follow the statutory procedure for condemnation.

¶ 57. The majority opinion tries to make the condemnor's failure to negotiate before sending the jurisdictional offer a major defect.[6] Parties can, however, negotiate after a jurisdictional offer is made. An attempt at negotiation was made in the instant case after notice of the jurisdictional offer; negotiations failed. Negotiation apparently also failed in the second condemnation proceeding.

¶ 58. The failure to negotiate means only that the condemnor may correct the error and proceed anew, as it did in the present case. The failure to negotiate is an error that can be rectified; the condemnor gets a "do-over." The condemnor does not lose its right to condemn the property.

¶ 59. The majority opinion dismisses the statutory requirement of a proposed date of occupancy (at issue in *Wieczorek*).[7] Yet the court of appeals has declared that a jurisdictional offer without a proposed date of occupancy is a defective jurisdictional offer and the jurisdictional offer is a jurisdictional requisite to condemnation.[8] The condemnor gets a do-over.

¶ 60. I question whether the distinction between jurisdictional and technical errors in *Schaefer* (and all the cases upon which *Schaefer* relied) can be extended

---

[6] Majority op., ¶ 13

[7] *Id.*, ¶¶ 12–13.

[8] *Toombs,* 119 Wis. 2d at 349.

beyond errors in a summons and complaint commencing an action in circuit court to the present case. In any event, nothing in the case law or ch. 32 of the statutes supports this jurisdictional/technical distinction for purposes of condemnation proceedings or for purposes of awarding litigation expenses.

## B

¶ 61. Not only does the majority opinion erroneously create a distinction between jurisdictional and technical errors that does not exist in the condemnation and litigation expenses statutes, it also ignores the fact that the only statutory provision that creates a "jurisdictional requisite" is not the provision at issue in the instant case, but rather is precisely the provision that was at issue in *Wieczorek*. Wisconsin Stat. § 32.05 characterizes only one act required of the condemnor as a "jurisdictional requisite," namely, sending the jurisdictional offer to the owner.

¶ 62. Wisconsin Stat. § 32.05(4) states that "notice [of a jurisdictional offer] is a *jurisdictional requisite* to a taking by condemnation" (emphasis added). In other words, the condemnor must send a notice of a jurisdictional offer to the owner. Notice of a jurisdictional offer is a jurisdictional requisite for the condemnor to proceed in condemnation, not a jurisdictional requisite for the circuit court to hear a challenge to a condemnation proceeding. Wisconsin Stat. § 32.05(3) requires that the notice of a jurisdictional offer state eight matters, one of which is the proposed date of occupancy.

¶ 63. Wisconsin Stat. § 32.05 sets forth in great detail the procedure to be followed for condemning land for highway construction. The condemnor shall take the following steps:

(1) "Shall" make a relocation order (§ 32.05(1));

111

(2) "Shall" cause an appraisal of the property (§ 32.05(2));

(3) "Shall" attempt to negotiate before making a jurisdictional offer (§ 32.05(2a));

(4) "Shall" send to the owner a jurisdictional offer to purchase setting forth an itemized analysis of the compensation offer. The analysis "shall" state (§ 32.05(3)):

> (a) the nature of the project and reference to the relocation order and that the condemnor intends to use property for public purpose (§ 32.05(3)(a));
>
> (b) a description of the property and interest therein to be taken (§ 32.05(3)(b));
>
> (c) the proposed date of occupancy (§ 32.05(3)(c));
>
> (d) the amount of compensation offered (§ 32.05(3)(d));
>
> (e) that the appraisal upon which the offer is based is available for inspection (§ 32.05(3)(e));
>
> (f) that the owner has 20 days to accept or reject the jurisdictional offer (§ 32.05(3)(f));
>
> (g) that the owner has 40 days from the date of completion of service to commence a court action to contest the right of condemnation under § 32.05(5) (§ 32.05(3)(g)); and
>
> (h) that the owner has 2 years from the date of the taking in which to appeal for greater compensation (§ 32.05(3)(h)).

(5) "Shall" give notice of the jurisdictional offer by personal service in manner of service of a circuit court summons or by certified mail (§ 32.05(4)).

¶ 64. If any condemnor's error in following the statutory procedures requires special attention, it is an

error relating to the notice of the jurisdictional offer. Nevertheless, nothing in the statutes describes the relative importance of these various procedural requirements imposed on the condemnor. Nothing in the statutes distinguishes Wis. Stat. § 32.05(3)(c) relating to the proposed date of occupancy from any of the other listed requirements of a jurisdictional offer or any other obligation imposed on the condemnor, including the attempt to negotiate. Indeed, each requirement set forth in § 32.05(1), (2), (2a), (3), and (4) is mandatory, and as the cases remind us, condemnation statutes applying to the exercise of the condemnation power are to be strictly construed.[9]

¶ 65. The legislature has explicitly treated all requirements imposed on the condemnor, including the notice of the jurisdictional offer, in the same way: A failure to follow a requirement is a flaw that does not affect the condemnation proceedings unless raised timely. The condemnee must raise any such defect (except the amount of just compensation) within 40 days from the date of personal service of the jurisdictional offer or be forever barred from raising any such objection. *See* Wis. Stat. § 32.05(5).

¶ 66. The law is clear that a condemnor must attempt to negotiate before making a jurisdictional offer. The law also is clear that if the condemnee does not object to the condemnor's failure to negotiate

---

[9] *Aero Auto Parts, Inc. v. DOT,* 78 Wis. 2d 235, 241, 253 N.W.2d 896 (1977) (quoting 1 Nichols, *Eminent Domain* § 3.213[4] (rev. 3d ed. 1976)); *Herro v. Natural Resources Bd.,* 53 Wis. 2d 157, 171, 192 N.W.2d 104 (1972); *City of Racine v. Bassinger,* 163 Wis. 2d 1029, 1037, 473 N.W.2d 526 (Ct. App. 1991).

within the 40–day period, the condemnee is barred from ever raising the objection again.[10]

¶ 67. The majority opinion dismisses the explicit statutory requirement that the jurisdictional offer state the proposed occupancy date as going to "neither the condemnor's power to act nor . . . providing just compensation to the property owner."[11] But the proposed date of occupancy is part of the jurisdictional offer;[12] without it, an offer made to the condemnee does not qualify as a jurisdictional offer.[13]

¶ 68. In light of the explicit characterization in Wis. Stat. § 32.05(4) of the jurisdictional offer as a "jurisdictional requisite," the majority opinion's characterization of a proposed occupancy date as a technical defect is problematic.

¶ 69. Case law has recognized that the crucial issue in any public taking is just compensation and has described the mandatory steps set forth in Wis. Stat. § 32.05 as "collateral procedural matters" to be raised promptly.[14] In other words, a violation of any of these provisions (including the negotiation requirement, the failure to send a jurisdictional offer, or any of the other requirements) may, under the statute, invalidate the condemnation proceeding, as long as the condemnee challenges the condemnation within 40 days. As the court explained in *Arrowhead Farms, Inc. v. Dodge County,* 21 Wis. 2d 631, 124 N.W.2d 631 (1963), the point of judicial review under Wis. Stat. § 32.05(5) is to decide challenges to the condemnation and to resolve

---

[10] *Arrowhead Farms, Inc. v. Dodge County,* 21 Wis. 2d 647, 652, 124 N.W.2d 631 (1963).

[11] Majority op., ¶ 12

[12] Wis. Stat. § 32.05(3)(c).

[13] *Toombs,* 119 Wis. 2d at 349.

[14] *Arrowhead Farms,* 21 Wis. 2d at 651.

these collateral procedural matters before the condemnation commission or a court turns to the matter of just compensation.[15] Until today, neither the statute nor case law had recognized different remedies for failing to follow the requirements of different paragraphs of Wis. Stat. § 32.05.

¶ 70. Wisconsin Stat. § 32.28(3)(b) awards litigation expenses to the condemnee when the condemnor does not have the right to condemn, not when the condemnor has failed to comply with the statutorily mandated steps and the condemnor may correct its errors.

¶ 71. As a result of the majority opinion, a defect in the jurisdictional offer (such as the omission of the proposed date of occupancy) does not justify the award of litigation expenses but the failure to attempt to negotiate does. How does this result make sense when the statute states that sending the jurisdictional offer to the owner is a "jurisdictional requisite," but does not so label the attempt to negotiate?

¶ 72. The majority opinion rests its jurisdictional/technical analysis on the precarious precipice of the "primary purpose" of the condemnation statutes, namely fair compensation. Not permitting the award of litigation expenses in the present case does nothing to interfere with that primary purpose.

C

¶ 73. The majority opinion fails to follow the rules set forth in the cases it cites. The case law makes clear that the remedy for the condemnor's failure to follow all the statutorily required steps is that the condemnee may challenge the condemnation proceedings in court and force the condemnor to correct the error.

---

[15] *Id.*

¶ 74. The cases explain that if a statute imposes steps on the condemnor and expressly or impliedly denies the condemnor the power to act unless the particular step is taken and no other remedy is provided for a failure to perform the particular step, the remedy is to challenge the condemnation under Wis. Stat. § 32.05.[16]

¶ 75. The majority opinion refuses to acknowledge that each paragraph in Wis. Stat. § 32.05 "sets forth the condemnation procedure," and "expressly . . . denies the power of the condemnor to act unless the particular step is taken," and that "no other statutory remedy is provided for a failure to perform the particular step."[17] These are the requirements for a procedural step to be "found to be jurisdictional" set forth by the court of appeals in *City of Racine v. Bassinger,* 163 Wis. 2d 1029, 1036–37, 473 N.W.2d 526 (Ct. App. 1991), the case relied upon by the majority for the rationale that failure to negotiate must be jurisdictional.

¶ 76. The majority opinion cites this principle of law at ¶ 12, but refuses to apply it. Wisconsin Stat. § 32.05 mandates numerous steps that the condemnor must take and denies the condemnor the power to proceed with the condemnation unless the steps are taken. Furthermore, the statute provides no other remedy for a failure to take the particular step except for the condemnee to challenge the condemnation under § 32.05 and require the condemnor to comply with the statutory mandate.

---

[16] *Bassinger,* 163 Wis. 2d at 1036–37. In *Bassinger* the requirements set forth in the regulations or statutes other than § 32.05 were distinguished from the requirements set forth in Wis. Stat. § 32.05. The latter were labeled jurisdictional.

[17] *Bassinger,* 163 Wis. 2d at 1036–37; majority op., ¶ 12.

¶ 77. The majority opinion is thus internally contradictory.

### D

¶ 78. The majority opinion's attempt to differentiate between jurisdictional defects and technical defects fails to follow *United States v. 4.18 Acres of Land,* 542 F.2d 786, 789 (9th Cir. 1976), which interpreted a federal statute similar to Wis. Stat. § 32.05(5) (1971) (and therefore similar to § 32.28(3)(b) (2003–04)). In *Wieczorek,* we examined *4.18 Acres of Land* and concluded that its reasoning was persuasive.[18]

¶ 79. In *4.18 Acres of Land,* the federal court of appeals dismissed a condemnation proceeding that was premature because of a correctable procedural flaw. The federal court explained that the dismissal did not prevent the federal agency from acquiring the land by eminent domain. Accordingly, the federal court of appeals concluded that the "cannot acquire" language of the federal statute governing the award of attorney fees suggests a case in which the federal agency has moved to condemn property without any authority to do so. The federal court of appeals explained the fallacy of the majority opinion's reasoning in allowing recovery of litigation expenses when the condemnor has authority to condemn the property if it follows the statutory procedure:

> Were we to construe [the federal statute] as requiring an award of litigation expenses whenever the initial proceeding was dismissed for whatever reason, the award would often be largely fortuitous, depending upon the effect given by the trial court to errors committed during or prior to trial. Had the district court in this case permitted the government to amend

---

[18] *Wieczorek,* 82 Wis. 2d at 25–26.

the complaint to reflect the correction of the procedural error, rather than dismissing the action, appellants would not be entitled to expenses. Congress could not have intended that the right to recover expenses turn upon such a difference.[19]

¶ 80. This reasoning for not allowing an award of litigation expenses when the condemnor has committed a correctable procedural flaw is consistent with *Wieczorek's* holding and with *Toombs v. Washburn County,* 119 Wis. 2d 346, 349, 350 N.W.2d 720 (Ct. App. 1984), holding that a condemnee has a right to attorney fees only if the condemnee prevails on the merits and the condemnation cannot proceed even if procedural defects are cured.

¶ 81. Other state courts have adopted this reasoning in interpreting their condemnation statutes that award litigation expenses to the condemnee. These cases conclude that the owner is not awarded expenses when a condemnation proceeding is dismissed based on correctable procedural flaws and the court does not rule that the property can never be acquired by condemnation.[20]

---

[19] *United States v. 4.18 Acres of Land,* 542 F.2d 786, 789 (9th Cir. 1976); *see also United States v. 5,553.80 Acres of Land,* 451 F. Supp. 220, 222 (W.D. La. 1978) ("[T]he condemnee can recover costs and appraisal and attorneys fees only if the court determines that the government is not entitled to condemn the property.").

[20] *See, e.g., Bd. of Comm'rs v. Wyant,* 672 N.E.2d 77 (Ind. Ct. App. 1996) (owner not entitled to attorney fees when condemnation dismissed because of correctable procedural defect); *Sorenson v. Lower Niobrara Natural Res. Dist.,* 340 N.W.2d 164 (Neb. 1983) (owner not entitled to attorney fees when dismissal of condemnation based on procedural flaw); *Dep't of Transp. v. Winston Container Co.,* 263 S.E.2d 838 (N.C. Ct. App. 1980) (dismissal of condemnation proceeding because resolution of department was insufficient did not justify award of fees to

¶ 82. The majority opinion provides no reason why only certain condemnees who identify only certain flaws are entitled to litigation expenses. Nothing in Wis. Stat. § 32.05 or § 32.28(3)(b) supports the distinction between jurisdictional and technical defects.

¶ 83. **ERROR 2.** The majority opinion errs in interpreting the words "the condemnor does not have the right to condemn" in Wis. Stat. § 32.28(3)(b) by failing to examine this provision in the context of § 32.28. *See* majority op., ¶¶ 21–24. The context and structure of a statute are important in determining its meaning.

¶ 84. The general rule is that condemnees pay their own litigation expenses. Litigation expenses are not included as just compensation for the taking of property by eminent domain. This rule makes sense because sellers of real property generally incur expenses such as broker fees, attorney fees, and appraisal fees for which the buyers do not compensate the sellers. Awarding litigation expenses to a condemnee is a matter of policy to be determined by the legislature.[21]

¶ 85. Wisconsin Stat. § 32.28 sets forth the four special circumstances in which litigation expenses are to be awarded to the condemnee:

(a) The proceeding is abandoned by the condemnor (§ 32.28(3)(a));

(b) The condemnor does not have the right to condemn the property described in the jurisdictional offer (§ 32.28(3)(b));

---

owner); *Town of Wheatland v. Bellis Farms, Inc.,* 806 P.2d 281, 285 (Wyo. 1991) (owners not entitled to attorney fees when court did not rule that land could never be acquired by condemnation).

[21] *Martineau,* 54 Wis. 2d at 85.

(c) The judgment is for the plaintiff when the property owner institutes condemnation proceedings (inverse condemnation—§ 32.28(3)(c));

(d) The amount the property owner receives exceeds a prescribed amount or percentage of the jurisdictional offer, award by the city, or award by the condemnation commission (§ 32.28(3)(d)-(i)).

¶ 86. These four special circumstances evidence recurring themes. In each of the circumstances a condemnee incurs extra expenses over the expenses ordinarily incurred by a condemnee in obtaining just compensation.

¶ 87. When the condemnor abandons the condemnation proceeding, the owner retains the property. Because the condemnor has forced the owner to incur litigation expenses and the condemnor did not take the property, the condemnor should reimburse the owner for litigation expenses.

¶ 88. When the condemnor does not have the right to condemn the property, the owner retains the property. Because the condemnor has forced the owner to incur litigation expenses and the condemnor did not take the property, the condemnor should reimburse the owner for litigation expenses.

¶ 89. Thus, the requirement that the court determine that the condemnor "does not have the right to condemn" before awarding litigation expenses, properly interpreted, supports the same legislative policy as awarding litigation expenses when the condemnor abandons the commendation.

¶ 90. If the condemnor can correct the flaws in its condemnation procedure and take the property by eminent domain, the condemnor has not forced the property owner to incur expenses even if it fails to

120

follow the proper condemnation procedures. If the owner wants to expend funds to delay the taking instead of litigating the primary issue in eminent domain, namely just compensation, the condemnor should not be forced to reimburse the owner for the owner's expenditures incurred in delaying the inevitable condemnation.

¶ 91. When the owner brings the condemnation suit (i.e., inverse condemnation) and wins, the owner is awarded litigation expenses. In inverse condemnation, the condemnor forces the owner to incur extra expenses in order to be able to receive just compensation for the condemnor's exercise of eminent domain. This situation is unlike the failure to negotiate because, in inverse condemnation cases, condemnees would receive no compensation from the condemnor if they did not bring an inverse condemnation action under § 32.10.

¶ 92. Finally, when the ultimate award exceeds a jurisdictional offer by a certain percentage or amount, an owner is awarded litigation expenses. The legislative history of Wis. Stat. § 32.28 makes clear that these provisions were enacted to induce the condemnor to offer just compensation or reimburse the condemnee for litigation expenses associated with an offer of compensation that is significantly less than just compensation.

¶ 93. Wisconsin Stat. § 32.28 read as a whole evinces the plan to ensure that the owner is compensated for litigation expenses when the condemnor abandons the condemnation proceeding, does not have the power to take the property, should have taken the property but did not, or has offered an unreasonable sum as just compensation.

¶ 94. The majority opinion's interpretation of "does not have the right to condemn" contravenes not only the words of the statute but the context of the statute.

¶ 95. **ERROR 3.** The majority opinion errs in trying to distinguish Wis. Stat. § 32.28(3)(b) (2003–04), the present statute governing litigation expenses, from § 32.05(5) (1971), the predecessor statute governing litigation expenses. *Wieczorek* interpreted the predecessor statute as not authorizing litigation expenses when the condemnor may, following correct procedures, take the property.

¶ 96. The predecessor statute provided for awarding litigation expenses when a condemnor *"cannot condemn the property."* The present statute, Wis. Stat. § 32.28(3)(b) (2003–04), uses the phrase *"does not have the right to condemn"* the property.[22] *Wieczorek* interpreted the predecessor statute's language *"cannot condemn the property"* to mean *"has no right to condemn."*[23]

---

[22] For an example of no right to condemn the property, see *Mitton v. DOT,* 184 Wis. 2d 738, 740, 516 N.W.2d 709 (1994), in which the court held that the Department lacked authority to condemn part of a property because the authorizing statute did not permit the Department to condemn land for the Department's stated purpose.

[23] In *Wieczorek,* 82 Wis. 2d at 24 ("[T]he phrase 'cannot condemn' means 'has no right to condemn' . . . .") we quoted *Wisconsin Town House Builders, Inc. v. City of Madison,* 37 Wis. 2d 44, 154 N.W.2d 232 (1967), stating:

> We think the jurisdictional offer is so defective that it cannot stand and must be declared void. However, it does not follow . . . that the condemnation process is thereby void ab initio including the lay out of the street as a controlled-access street. The relocation order is a determination of necessity and of the purpose of the condemnation and remains unaffected. We think the relocation order, appraisal, and the negotiation are valid steps in the process for the

¶ 97. The statute awarding litigation expenses at issue in *Wieczorek,* Wis. Stat. § 32.05(5) (1971), stated in relevant part as follows:

> 32.05(5) . . . If the final judgment of the court is that *the condemnor cannot condemn the property* described in the jurisdictional offer, the judgment shall also award the owner such sum as will reimburse the owner for his reasonable costs, disbursements and expenses including reasonable attorney and engineering fees actually incurred because of the action of the condemnor. . . . (emphasis added).

¶ 98. The present counterpart to this sentence in Wis. Stat. § 32.05(5) (1971) is Wis. Stat. § 32.28(3)(b) (2003–04). It reads in relevant part as follows:

> 32.28 (3) In lieu of costs under ch. 814, litigation expenses shall be awarded to the condemnee if:
>
> . . . .
>
> (b) The court determines that *the condemnor does not have the right to condemn* part or all of the property described in the jurisdictional offer or there is no necessity for this taking . . . . (emphasis added).

¶ 99. Even a cursory reading of both statutes, let alone a careful reading, evidences that the current statute is essentially the same as the predecessor statute interpreted in *Wieczorek.* Indeed, the majority opin-

> purpose of compensating the plaintiff for the property taken. The City of Madison should make a new and proper jurisdictional offer to purchase the plaintiff's land and the condemnation proceeding should continue from that point.

*Wieczorek,* 82 Wis. 2d at 21 n.2 (quoting *Wisconsin Town House Builders,* 37 Wis. 2d at 55).

ion even concedes that *Wieczorek* is a reasonable interpretation of the statute at issue in the present case.[24]

¶ 100.　According to the majority opinion, the statutory change of language in § 32.28(3)(b) (2003–04) from the 1971 version "cannot condemn" to read "right to condemn" *changed the substance of* the statute. Majority op., ¶¶ 25–27. The majority opinion concludes that the words "right to condemn" in § 32.28(3)(b) (2003–04) must be interpreted in the same way as the words "right to condemn" in § 32.05(5) governing a condemnee's commencement of a lawsuit. Majority op., ¶ 24.

¶ 101.　The majority ignores the fact that the language of Wis. Stat. § 32.05(5) (1971) and § 32.05(5) (2003–04) is the same; both speak of the "right to condemn," governing a condemnee's commencement of a lawsuit.

¶ 102.　The predecessor statute, Wis. Stat. § 32.05(5) (1971), provided in relevant part as follows (emphasis added):

> 32.05(5) When an owner desires *to contest the right of the condemnor to condemn the property* described in the jurisdictional offer for any reason other than that the amount of compensation offered is inadequate, such owner may . . . commence an action in the circuit court of the county wherein the property is located . . . .

¶ 103.　The current statute, Wis. Stat. § 32.05(5) (2003–04), provides in relevant part as follows (emphasis added):

> 32.05(5) If an owner desires *to contest the right of the condemnor to condemn the property* described in the jurisdictional offer, for any reason other than that the amount of compensation offered is inadequate, the owner may . . . commence an action in the circuit court of the county wherein the property is located.

---

[24] Majority op., ¶ 22.

¶ 104. Both the predecessor and current statutes describe how an owner who contests *the right of the condemnor to condemn the property* commences a lawsuit. Accordingly, I conclude that Wis. Stat. § 32.28(3)(b), using the words "has no right to condemn," does not change the allocation of litigation expenses set forth in *Wieczorek.*

¶ 105. In both *Wieczorek* and the present case, a judgment for the condemnee was entered in the condemnee's action under Wis. Stat. § 32.05(5) (1971) and (2003–04), respectively, dismissing the condemnation proceeding. The judgments for the condemnee were final regarding the proceeding brought by the condemnee. In both *Wieczorek* and the instant case, the condemnor could initiate another condemnation action against the condemnee. In both cases the judgment for the condemnee was not the final judgment in the sense that it did not finally determine that the condemnor did not have the right to condemn the property if all the procedural prerequisites for condemnation were satisfied.[25]

¶ 106. I conclude that the majority opinion makes much ado about nothing in trying to distinguish the 1971 and 2003–04 statutes governing litigation expenses.

¶ 107. **ERROR 4.** The majority opinion errs in its view of the legislative history of the amendment creating Wis. Stat. § 32.28(3)(b) (2003–04). *See* majority op., ¶¶ 25–29. Although the majority opinion characterizes

---

[25] In interpreting the predecessor statute, *Wieczorek* interpreted the words "final judgment . . . that the condemnor cannot condemn the property" in Wis. Stat. § 35.05(5) (1971). Similarly, the words "the condemnor does not have the right to condemn" the property in § 32.28(3)(b) (2003–04) refer to an ultimate conclusion that the condemnor does not have the right to condemn the property at all. The circuit court reached no such decision on the merits in either *Wieczorek* or the present case.

Wis. Stat. § 32.28(3)(b) (2003–04) as ambiguous, requiring an examination of the legislative history,[26] the legislative history does not support the majority opinion's interpretation of § 32.28(3)(b) (2003–04).

¶ 108. The majority opinion ignores a note to 1977 Assembly Bill 1077 (1978) in the drafting file of ch. 440, Laws of 1977. The note explains that the substance of the final sentence of Wis. Stat. § 32.05(5) (1971) (quoted above) is retained as new § 32.28(3)(b) (2003–04) to allow recovery of reasonable and necessary expenses "when the court determines that the condemnor lacks power to condemn the property in question, or that the necessity of the taking has not been established." The note goes on to explain that § 32.05 (1971) requires the award of such costs in the same kind of cases as set forth in the new § 32.28(3)(b) (2003–04).[27]

¶ 109. The majority opinion also ignores the Legislative Council staff briefs and reports, which are part of the legislative history of the current statute. These documents repeatedly indicate that the goal of the Legislative Council Special Committee on Eminent Domain was to change the law to allow litigation expenses when the condemnee receives more money through litigation or appeal than was originally offered. The Special Committee concluded that it was not fair that a condemnee had to pay the expenses of litigation to receive a fair and reasonable amount of compensation.[28]

---

[26] Majority op., ¶ 20.

[27] Drafting Record for ch. 440, Laws of 1977, re: A.B. 1077 (available at Wis. Legislative Reference Bureau, Madison, Wis.).

[28] *See, e.g.,* Legislative Council Report no. 77–28, at 5 (Dec. 12, 1977):

[T]he Bill awards statutory costs to the successful party in condemnation actions . . . . The condemnee is the "successful party" whenever the award of the commissioners or verdict of the court exceeds the jurisdictional offer. . . .

¶ 110. The Department of Transportation fiscal estimate upon which the majority opinion relies does not attribute the increased costs to Wis. Stat. § 32.28(3)(b) (2003–04), the carryover provision from § 32.05 (1971). As the majority opinion points out, Wis.

> The costs of condemnation actions are often a problem when the condemnation proceedings involve a condemnation commission. When the condemnee appeals the basic award, the condemnation commission's award is often higher than the jurisdictional offer. If the condemnor then appeals, the jury verdict is often less than the condemnation commission's award, although still more than the basic award. Under these facts, the current statutes provide that the condemnee must pay the costs of the appeal by the condemnor to the court.

> This Bill changes this result and requires the condemnor to pay the costs of the condemnee's appeal if either the award of the commissioners or the verdict of the court is more than the jurisdictional offer. The Bill thus assures that the condemnee need not bear the cost of obtaining a fair amount of compensation for property taken.

Legislative Council Staff Brief 77–7, at 3, 4 (June 13, 1977):

> Present Wisconsin Statutes do not permit recovery of any costs or expenses where the purchase price is negotiated or where the award of the condemnation commissioners is accepted by the condemnee. The condemnee bears his own expenses even when the circuit court judge or jury find the jurisdictional award *too low*.

> . . . .

> . . . [M]any landowners may settle out of court for less than full compensation, in the knowledge that the cost of obtaining a fair price may exceed the difference between such price and the condemnor's offer.

> The intent of the attorney fee statutes is thus not to encourage litigation, but to equalize the bargaining position of condemnor and condemnee so that the former's offers and settlements will more nearly reflect full value.

Legislative Council materials are on file with the Wis. Legislative Council and the Wis. Legislative Reference Bureau, Madison, Wis.

Stat. § 32.28(3) contains nine circumstances in which condemnees are entitled to litigation expenses.[29] Eight of these nine circumstances were new, namely, abandonment, inverse condemnation actions, and six types of low-ball jurisdictional offers or compensation awards. Section 32.28(3)(b), awarding litigation expenses when the condemnor does not have the right to condemn, was retained from the predecessor statute.

¶ 111. Low-ball jurisdictional offers are the primary cost increases under the litigation expense shifting provisions that are identified in the fiscal note. The fiscal estimate explains that "[m]ost of [the] cost increase is likely to occur from appealed cases where the condemnee receives an award . . . that exceeds the jurisdictional offer by at least 10%."[30]

¶ 112. The legislative history of Wis. Stat. § 32.28 is consistent with *Wieczorek*'s holding that a condemnee has a right to attorney fees only if the condemnee prevails on the merits by establishing that the condemnation cannot proceed even after any procedural defects have been cured. The majority opinion errs in its reading of the legislative history.

¶ 113. **ERROR 5.** The majority opinion errs in concluding that the legislative policy in Wis. Stat. § 32.28(3)(b) is to award a condemnee litigation expenses to encourage the condemnor to follow the con-

---

[29] Wis. Stat. § 32.28(3)(a)-(i); *see* majority op., ¶ 27.

[30] Drafting Record for ch. 440, Laws of 1977, re: A.B. 1077, (available at Wis. Legislative Reference Bureau, Madison, Wis.). The fiscal estimate also points to increases in costs due to abandoned condemnation proceedings and challenges to the "condemnor's *authority* to condemn." Drafting Record for ch. 440, Laws of 1977, re: A.B. 1077 (available at Wis. Legislative Reference Bureau, Madison, Wis.).

demnation statutes. *See* majority op., ¶ 29.[31] Yet the majority opinion contravenes this policy by allowing the condemnor to make "technical" errors without paying litigation expenses.

¶ 114. The majority opinion offers no support for its broad statement of legislative policy in the text of Wis. Stat. § 32.28(3)(b) or the context of the statute, the legislative history, or the case law.

¶ 115. The text of Wis. Stat. § 32.28(3)(b) does not state that if the condemnor fails to follow carefully the condemnation statutes, the condemnee will be awarded litigation expenses.

¶ 116. The legislative history does not support the majority opinion's statement of legislative policy. The Wisconsin Legislative Council Summary of the Proceedings of the Special Committee on Eminent Domain (Sept. 9, 1977) demonstrates the error of the majority opinion's broad view of shifting litigation expenses from the condemnee to the condemnor. In discussing proposed legislation for litigation expenses in eminent domain proceedings, some members of the Legislative Council urged that litigation costs should be recovered at each stage of litigation. "Other members expressed a concern that such a provision would encourage litigation and expressed approval of the bill as drafted."[32] Ultimately, the legislature did not allow recovery of litigation expenses at each stage of the litigation.

---

[31] I agree with the majority opinion that the legislative policy choice in the current statute shifting litigation expenses is to force condemnors to make fair jurisdictional offers and avoid unreasonably low-ball offers as defined by Wis. Stat. §§ 32.28(3)(d)-(i) (2003–04). *See* majority op., ¶¶ 13, 34.

[32] Legislative Council, Summary of Proceedings, Special Committee on Eminent Domain (Sept. 9, 1977), at 6.

¶ 117. Other Legislative Council materials indicate that the purpose of shifting litigation expenses is to equalize bargaining positions and encourage the condemnor's offers to be close to full value.[33] The errors in the present case and in *Wieczorek* do not involve value. Value is not an issue in a Wis. Stat. § 32.05(5) proceeding.

¶ 118. The cases the majority opinion relies on to support its conclusion that the legislative policy underlying Wis. Stat. § 32.28(3)(b) is to encourage condemnors to follow carefully the condemnation statutes do not support the majority opinion's thesis.

¶ 119. *Redevelopment Authority of Green Bay v. Bee Frank,* 120 Wis. 2d 402, 355 N.W.2d 240 (1984), and *Standard Theaters, Inc. v. Department of Transportation,* 118 Wis. 2d 730, 349 N.W.2d 661 (1984), relied upon by the majority opinion, *see* majority op., ¶¶ 29–32, explain that the public policy underlying awarding litigation expenses to the condemnee is to discourage the condemnor from making a low-ball offer. These cases do not describe a broad legislative policy supporting shifting litigation expenses generally in condemnation cases whenever the condemnee is successful in a lawsuit.

¶ 120. The majority's reliance on *Bee Frank* and *Standard Theatres* is spurious. The present case and Wis. Stat. § 32.28(3)(b) (2003–04), the statutory provision at issue in the present case, do not involve "low-ball offers."

¶ 121. Indeed, the majority opinion fails to recognize that the statute does not even shift litigation expenses for every landowner who successfully challenges a "low-ball offer." Sections 32.28(3)(d)-(i) (2003–04)

---

[33] Legislative Council Staff Brief 77–7, at 3, 4 (June 13, 1977) (quoted at note 28, *supra*).

provide for shifting litigation expenses only when the condemnee meets the mathematical requirements set forth in the statutes. Thus, even the statutory provisions that expressly address "low-ball offers" are not designed to make the landowner "whole" in every situation in which the condemnee litigates.

¶ 122. If the majority opinion's explanation of the legislative policy is correct, the majority opinion's distinction between jurisdictional and technical flaws does not fulfill the legislative policy. It does not award litigation expenses for statutory violations it deems "technical," and therefore the condemnor is not encouraged to follow the condemnation statutes.

\* \* \* \*

¶ 123. In sum, no reason exists to distinguish between a failure to negotiate in good faith prior to making a jurisdictional offer, as in the present case, and a failure to state a proposed date of occupancy in the jurisdictional offer, as in *Wieczorek*.

¶ 124. In each of these contexts, the condemning authority need do no more than correct the error. The inevitable result in both situations is condemnation, and Wis. Stat. § 32.28 and the predecessor statute retain the American rule that a plaintiff, here the condemnee, pays its own litigation expenses unless the case falls within one of the specified statutory exceptions.

¶ 125. For the reasons stated, I would hold that *Wieczorek* governs the case at bar. The circuit court and court of appeals got it right. Accordingly, I dissent.

¶ 126. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

